...

**NOT FOR CITATION**

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LISA SIMONE KELLY,<br><br>    Plaintiff,<br><br>  v.<br><br>WALLY ROKER, et al.,<br><br>    Defendants.<br>_____/ | No. C 11-05822 JSW<br><br>**ORDER DENYING MOTION TO DISQUALIFY COUNSEL** |

## INTRODUCTION

Now before the Court for consideration is the motion to disqualify filed by Defendants Andrew Stroud ("Mr. Stroud") and Andy Stroud, Inc. ("Stroud, Inc.") (collectively "Stroud"). The Court has considered the parties' papers, relevant legal authority, and the record in this case, and it finds the matter suitable for disposition without oral argument. *See* N.D. Civ. L.R. 7-1(b). The Court VACATES the hearing date set for March 16, 2012, and it HEREBY DENIES the motion to disqualify.

## BACKGROUND

This matter is yet another part of protracted litigation regarding the rights to recordings of the late Nina Simone ("Ms. Simone") and personal property belonging to Ms. Simone, including *Brown v. Stroud*, 08-2348-JSW (the "*Stroud* Action") and *Stroud Production Enterprises, Inc. v. Castle Rock Entertainment, Inc.*, 09-3796-JSW (the "*Castle Rock* action"). Mr. Stroud is Ms. Simone's ex-husband. Lisa Kelly ("Ms. Kelly") is the daughter of Mr. Stroud and Ms. Simone and is the Administrator for Ms. Simone's estate (the "Estate").

According to the record, "upon ... Ms. Kelly's recommendation, [Mr. Stroud] retained the law firm of Shukat Arrow Hafer Weber & Herbsman LLP ("Shukat Arrow") to represent [him] in connection with all music industry matters relating to my Nina Simone ownership interests, including" a lawsuit that was pending between Stroud and Sony BMG. (Declaration of Andrew B. Stroud in Support of Motion to Disqualify ("Stroud Decl."), ¶¶ 8-9.) On February 27, 2006, Peter Shukat, Esq. ("Mr. Shukat"), sent Mr. Stroud an engagement letter "to confirm the scope and terms of our engagement as counsel." (Stroud Decl., Ex. B.) In that letter, Mr. Shukat stated that "[w]e look forward to the opportunity to represent you in connection with your music industry endeavors relating to Nina Simone, including without limitation litigation versus Sony BMG." (*Id.*)

On March 6, 2006, Mr. Shukat sent Mr. Stroud and Ms. Kelly a letter regarding the fact that the firm represented them both. In that letter he noted that, at that time, their interests coincided but also noted that Shukat Arrow might become privy to confidential information. "Because of this access to confidential information, if during the course of our representation there is a dispute between the Estate and Mr. Stroud, we may no longer be able to continue to represent either of you. Moreover, you should be aware that if any such dispute among you ever results in litigation we cannot represent either of you." (Declaration of Melissa Newell in Support of Motion to Disqualify ("Newell Decl."), ¶ 2, Ex. A at 2-3.) Mr. Stroud acknowledged this letter and his understanding of the joint representation. (*Id.*)

Stroud claims his counsel became "aware of the circumstances" of Shukat Arrow's prior representation of him on or about October 7, 2011. (Newell Decl., ¶ 2.) On that date, his counsel sent a letter to Shukat Arrow in which it objected to the firm's continued representation of the Estate in the *Stroud* action. (*Id.*, Ex. A.) Shukat Arrow responded by advising Stroud's counsel that the issue had been raised, and "waived" by Stroud's previous counsel in the *Castle Rock* action in 2007. (*Id.*, Ex. B.) Shukat Arrow attests that it has expended over 500 hours of work in this and related litigation. (Declaration of Dorothy Weber ("Weber Decl."), ¶ 18.) It is undisputed that there is no express written waiver of the purported conflict. In addition, although Ms. Weber attests that Stroud's prior counsel orally waived any conflict during a court

hearing, Stroud claims he has no recollection of permitting a waiver and the record does not contain a transcript of the proceedings at which the alleged oral waiver occurred.

On December 2, 2011, Ms. Kelly filed the Complaint in this case. On January 30, 2012, Stroud filed the motion to disqualify.

## ANALYSIS

**A.     Legal Standards Applicable to Motions to Disqualify.**

Lawyers who appear before the United States District for the Northern District of California are required to comply with the California Rules of Professional Conduct. *See* Civ. L.R. 11-4(a)(1) (requiring that all members of the bar of this Court and attorneys permitted to practice before the Court pro hac vice must be "familiar and comply with the standards of professional conduct required of members of the State Bar of California"). In order to determine whether to disqualify counsel, the Court applies California law. *See In re County of Los Angeles*, 223 F.3d 990, 995 (9th Cir. 2000); *Hitachi, Ltd. v. Tatung Co.*, 419 F. Supp. 2d 1158, 1160 (N.D. Cal. 2006). Further, "the decision to disqualify counsel for conflict of interest is within the court's discretion." *Hitatchi*, 419 F. Supp. 2d at 1160 (citing *Trone v. Smith*, 621 F.2d 994, 999 (9th Cir. 1980)).

A court should examine a motion to disqualify counsel carefully "to ensure that literalism does not deny the parties substantial justice." *People ex rel Dept. of Corporations v. Speedee Oil Change Systems, Inc.*, 20 Cal. 4th 1135, 1144 (1999) ("*Speedee Oil*"). Thus, a court must balance such varied interests as a party's right to chosen counsel, the interest in representing a client, the burden placed on a client to find new counsel, and the possibility that "tactical abuse underlies the disqualification motion." *Id.* at 1145. "Ultimately, however, a court must maintain ethical standards of professional responsibility." *Hitachi*, 419 F. Supp. 2d at 1161 (citing *Speedee Oil*, 20 Cal. 4th at 1145).

An order of disqualification of counsel is a drastic measure which courts should hesitate to impose except in circumstances of absolute necessity. *In re Marvel*, 251 B.R. 869, 871 (N.D.Cal. 2000) (citing *Schiessle v. Stephens*, 717 F.2d 417 (7th Cir.1983)). Motions for disqualification are often tactically motivated and they tend to derail the efficient progress of

litigation. *Evans v. Artek Systems Corp.*, 715 F.2d 788, 791 (2d Cir.1983). The moving party, therefore, carries a heavy burden and must satisfy a high standard of proof. *Id.* Because of the potential for abuse, disqualification motions should be subjected to particularly strict judicial scrutiny. *Optyl Eyewear Fashion International Corp. v. Style Companies, Ltd.,* 760 F.2d 1045, 1049 (9th Cir. 1985) (citing *Freeman v. Chicago Musical Instrument Co.*, 689 F.2d 715, 721-22 (7th Cir. 1982)).

California Rule of Professional Conduct 3-310(E) provides that "[a] member shall not, without the informed written consent of the client or former client, accept employment adverse to the client or former client where, by reason of the representation of the client or former client, the member has obtained confidential information material to the employment." When, as here, the alleged conflict of interest arises from successive representation of clients with potentially adverse interests, the principal question is whether there is a "substantial relationship" between the subjects of the former and current relationships. *Flatt v. Superior Court*, 9 Cal. 4th 275, 283 (1994).

The determination whether a "substantial relationship" exists requires an inquiry into the similarities between the two factual situations, the legal questions posed, and the nature and extent of the attorney's involvement. *Morrison Knudsen Corp. v. Hancock, Rothert & Bunshoft*, 69 Cal. App. 4th 223, 234 (1999) (citing *H.F. Ahmanson & Co. v. Salomon Brothers, Inc.*, 229 Cal. App. 3d 1445, 1455 (1991)). In addition, it must be shown that the information from the prior representation is material to the current employment. *Morrison*, 69 Cal. App. 4th at 234 (citing Rule 3-310(E)). As part of its review, the court should examine the time spent by the attorney on the earlier case, the type of work performed, and the attorney's possible exposure to formulation of policy or strategy. *Morrison*, 69 Cal. App. 4th at 234 (citing *H.F. Ahmanson*, 229 Cal. App. 3d at 1455).

Successive representations will be considered substantially related where the facts support a "rational conclusion that information material to the evaluation, prosecution, settlement or accomplishment of the former representation given its factual and legal issues is also material to the evaluation, prosecution, settlement or accomplishment of the current

4

representation given its factual and legal issues." *Jessen v. Hartford Casualty Ins. Co.*, 111 Cal. App. 4th 698, 713 (2003) (citations omitted); *see also Trone*, 621 F.2d at 998 ("Substantiality is present if the factual contexts of the two representations are similar or related."). Where the requisite substantial relationship exists, "access to confidential information by the attorney in the course of the first representation (relevant, by definition, to the second representation) is *presumed* and disqualification of the attorney's representation of the second client is mandatory; indeed, the disqualification extends vicariously to the entire firm." *Flatt*, 9 Cal. 4th at 283 (emphasis in original); *see also Hitachi*, 419 F. Supp. 2d at 1161.

However, "[i]t is not in the interests of justice to make the 'substantial relationship' rule *so unyielding* as to permit the former client to inexcusably postpone objections without penalty. Therefore, a narrow exception should apply if the present client, by way of opposition, offers prima facie evidence of an unreasonably delay by the former client in making the motion and resulting prejudice to the current client." *River West, Inc. v. Nickel*, 188 Cal. App. 3d 1297, 1309 (1987) (emphasis in original); *see also Trust Corp. of Montana v. Piper Aircraft Corp.*, 701 F.2d 85, 87 (9th Cir. 1983) ("It is well settled that a former client who is entitled to object to an attorney representing an opposing party on the ground of conflict of interest but who knowingly refrains from asserting it promptly is deemed to have waived that right.").

**B.     The Court Denies the Motion.**

The Estate argues that Shukat Arrow's previous representation of Mr. Stroud is not substantially related to the instant litigation and that Stroud previously conceded that point. (*See, e.g.,* Newel Decl., Exs. B-D; Weber Decl., ¶¶ 14-18.) The Estate also argues that, by virtue of his unreasonable delay in raising the issue, Stroud should be deemed to have impliedly waived any potential conflict. Assuming *arguendo* that Stroud has met his burden to show a substantial relationship between the matters at issue here and the matters for which Shukat Arrow represented him, the Court finds he impliedly waived any conflict.

In the *River West* case, the court explained that if the opposing party makes a *prima facie* showing of an unreasonable delay, "[t]he burden then shifts back to the party seeking disqualification to justify the delay. That party should address: (1) how long it has known of

5

1 the potential conflict; (2) whether it has been represented by counsel since it has known of the
2 potential conflict; (3) whether anyone prevented the moving party from making the motion
3 earlier; and (4) whether an earlier motion to disqualify would have been inappropriate or futile
4 and why." 188 Cal. App. 3d at 1309.

5     In *River West*, the defendant moved to disqualify plaintiff's counsel based on the fact
6 that approximately thirty years earlier, one of plaintiff's attorneys had represented the defendant
7 on matters that the trial court found were substantially related to the present litigation. *Id.* at
8 1299-1300. Applying the factors set forth above, the court of appeal noted that the defendant
9 had filed a complaint based on the purported conflict about a year after the plaintiff filed the
10 lawsuit and "therefore had knowledge of the conflict well over three years *before* he made the
11 motion to disqualify." *Id.* at 1311 (emphasis added). The defendant also had been represented
12 by counsel and there was no evidence that any one had tried to prevent him from moving to
13 disqualify plaintiff's counsel. Finally, the court found the defendant's arguments regarding
14 futility, which was premised on an alleged inability to find a suitable judge to hear the motion,
15 did not excuse his delay. The court also noted that by the time the defendant filed his motion,
16 plaintiff's counsel had engaged in over 3,000 hours of litigation effort and had expended almost
17 $400,000 in attorneys' fees and costs. *Id.* at 1300, 1311-12. Thus, it found "the delay in
18 making the disqualification motion so unreasonable and the resulting prejudice so great, that the
19 law must assume an implied waiver of the right to disqualify" plaintiff's counsel. *Id.* at 1313.

20     Stroud argues that, unlike the situation in the *River West* case, there has been no delay
21 because he filed his motion soon after the Estate filed this case. If the court were to take a
22 limited view of the situation, Stroud's argument might have some force, because *this* case *is* in
23 the early stages of litigation. However, this case is yet another strand in the web of litigation
24 between the parties, which has been pending for years. Although Stroud may wish to ignore
25 those facts, the Court cannot.

26     It is clear that Stroud - if not his current counsel - has known of the facts underlying the
27 alleged conflict since at least 2007, when the issue was raised in the *Castle Rock* action. *Cf.*
28 *Metro-Goldwyn-Mayer, Inc. v. Tracinda Corp.,* 36 Cal. App. 4th 1832, 1843 ("The proscription

6

exists where counsel's employment is adverse to the client or former client and can exist even though a prior client is not a party to the litigation."); *Bates v. Granada Healthcare and Rehab Ctr.*, 2008 WL 4195954, at *8 (Cal. App. Sept. 15, 2008). In addition, although he raised the issue in October 2011 in the *Stroud* action, he has yet to file a motion to disqualify in that case. Stroud also has been represented by counsel in this case and in the *Stroud* and *Castle Rock* actions. There is no evidence that any one prevented or attempted to prevent Stroud from pursuing a motion to disqualify Shukat Arrow from representing Ms. Kelly or the Estate at any time.

With respect to the fourth factor, although it appears that Stroud filed his motion as early as possible in the instant litigation, he fails to offer any persuasive reason for not acting sooner in the other cases. Thus, given the extensive litigation between the parties, the Court finds that Stroud's failure to act on this issue, despite his knowledge of the purported conflict, for over five years amounts to an unreasonable delay. *Trust Corporation*, 701 F.2d at 87 (30 month delay unreasonable); *River West*, 188 Cal. App. 3d at 1311-12 (39 month delay unreasonable); *Bates*, 2008 WL 4195954, at *12 (delay of at least one year unreasonable). In addition, given the amount of work Shukat Arrow has conducted in the related litigation and the fact that such work is likely to be relevant to this lawsuit, the Court finds that the Estate would be prejudiced if the Court were to grant Stroud's request.

## CONCLUSION

For the foregoing reasons, the Court concludes that Stroud has impliedly waived any potential conflict that may exist based on the fact that Shukat Arrow previously represented him, and it DENIES his motion to disqualify on that basis.

**IT IS SO ORDERED.**

Dated: March 13, 2012

JEFFREY S. WHITE
UNITED STATES DISTRICT JUDGE

7