1
2
3
4
5
6
7

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN FRANCISCO DIVISION

| | |
|---|---|
| LISA SIMONE KELLY, duly appointed Administrator of the Estate of Nina Simone, <br><br> Plaintiff, <br><br> v. <br><br> WALLY ROKER, an individual, and d/b/a ICU ENT. DIST., d/b/a WALLY ROKER MUSIC; ANDY STROUD, INC.; and ANDREW B. STROUD, <br><br> Defendants. | No. 11-cv-05822 JSW (NC) <br><br> **REPORT AND RECOMMENDATION ON MOTION FOR DEFAULT JUDGMENT** <br><br> Re:  Dkt. No. 133 |
| ANDY STROUD, INC., <br><br> Counterclaimant, <br> v. <br><br> LISA SIMONE KELLY, duly appointed Administrator of the Estate of Nina Simone, <br><br> Counter-Defendant. | |

This action is one of four cases pending before the Court involving disputes regarding the ownership rights to recordings by the late jazz singer Nina Simone.  In this case, the Estate of Nina Simone brings claims arising out of the alleged fraudulent conveyance by Nina Simone's former husband and manager, Andrew B. Stroud, and Andy

1  Stroud, Inc. ("ASI") of the Nina Simone materials and recordings subject to the pending

2  *Brown v. Stroud* litigation to a third party.  After the third party defaulted and the District

3  Court sanctioned the Stroud parties by entering default against them, the Simone Estate

4  filed a motion for default judgment that was referred for report and recommendation to the

5  undersigned Magistrate Judge.  The undersigned RECOMMENDS to the District Court to

6  GRANT IN PART AND DENY IN PART the motion for default judgment.

7  **I. BACKGROUND**

8  **A.    The *Stroud v. Castle Rock* Action**

9        On October 5, 2007, Andrew B. Stroud and Stroud Productions and Enterprises, Inc.

10  ("SPE") commenced an action against defendants Castle Rock Entertainment, Inc., Warner

11  Bros. Entertainment Inc., and Warner Independent Pictures, Inc. in the Southern District of

12  New York, No. 07-cv-08638 ("*Stroud v. Castle Rock*").  Dkt. No. 105 at 2, 4-12, No. 09-

13  cv-03796 JSW.  In that action, Andrew B. Stroud and SPE claim that they own the song

14  recording, including the copyright therein, embodying the performance by Nina Simone of

15  the composition titled "Just in Time."  The complaint alleges that the copyright filed for by

16  Andrew B. Stroud and SPE in connection with "Just in Time" is titled "Nina Simone Sings

17  Billie Holiday" and was filed with the U.S. Copyright Office on or about January 22, 1973.

18  *Id.* at 7.  The complaint further alleges that Andrew B. Stroud was Nina Simone's producer

19  at the time Nina Simone gave the subject performance of the song, "Just in Time," and that

20  a recording of the performance was maintained by Andrew B. Stroud.  *Id.* at 7-8.  Andrew

21  B. Stroud and SPE allege that several years before filing the *Stroud v. Castle Rock* action,

22  they licensed "Just in Time" for a limited period, but that those licenses have expired and

23  all rights are held by them.  *Id.* at 8.

24        Andrew B. Stroud and SPE claim that Castle Rock Entertainment, Inc., Warner Bros.

25  Entertainment Inc., and Warner Independent Pictures, Inc. used "Just in Time" in the

26  motion picture titled "Before Sunset" and the accompanying soundtrack without entering

27  into any license agreement for the subject sound recording with Andrew B. Stroud and SPE

28  and continue to commercially exploit the film.  *Id.* at 8-9.  The complaint asserts two

causes of action: "for infringement of copyright arising under the copyright laws of the United States, Title 17 of the United States Code and for unfair competition under § 43 (a) of the Lanham Act (15 U.S.C. § 1125(a))." *Id.* at 6.

**B.    The *Brown v. Stroud* Action**

On May 7, 2008, Steven Ames Brown filed a complaint against Andrew B. Stroud and SPE in this Court, seeking declaratory relief regarding the ownership of certain Nina Simone recordings ("*Brown v. Stroud*").  Dkt. No. 1 at 1, No. 08-cv-02348 JSW.  In his operative, first amended complaint, Brown alleges that, by virtue of a written contract he entered into on July 30, 1990, with Nina Simone, he obtained a 40% ownership interest in approximately 104 sound recordings ("the Masters") authored by Nina Simone.  Dkt. No. 35 at 2, No. 08-cv-02348 JSW.  According to the complaint, title to 52 of the Masters was disputed by various defendants in prior litigation based on chains of title that purportedly began with Andrew B. Stroud and/or SPE.  *Id.*  Brown alleges that the song "Just in Time" was first fixed prior to February 15, 1972, and was one of the disputed Masters.  *Id.* at 3, 5. In February 2004, Brown and the Simone Estate licensed "Just in Time" for use in the soundtrack of the motion picture "Before Sunset."  *Id.* at 3.  The closing credits of "Before Sunset" listed Brown and the Simone Estate as the licensors of "Just in Time."  *Id.* Brown's first amended complaint asserted two claims for relief, for declaratory relief as to the ownership of the disputed Masters, and copyright infringement under the common law and California Civil Code § 980(a)(2) as a result of Andrew B. Stroud and SPE's sale to the public of digital copies of "Just in Time" without Brown's consent.  *Id.* at 4-5.

After Andrew B. Stroud and SPE counterclaimed against Brown and the Simone Estate, the Simone Estate, "by its duly appointed administrator Lisa Simone Kelly" also filed counterclaims.  Dkt. No. 263, No. 08-cv-02348 JSW.  The operative counterclaims seek a declaration of the Simone Estate's rights and the return of Nina Simone's diaries, letters, photographs, recordings, videotapes, or other depictions of Nina Simone, the property identified on Schedules A and B of the Stroud Property Settlement, and all other recorded Nina Simone performances that are in the possession, custody, or control of

Andrew B. Stroud and SPE, or in which Andrew B. Stroud and SPE claim an ownership interest (the "Simone Materials"). *Id.* at 11, 13-14. The Simone Estate asserts four claims for relief in the counterclaims: (1) for declaratory judgment, seeking (a) a judicial declaration that the Estate is and always has been the rightful owner of the copyrights and other intellectual property rights to the Simone Materials, and that Andrew B. Stroud and SPE have no rights to the copyrights to the Simone Materials; (b) an injunction prohibiting Andrew B. Stroud and SPE from attempting to license, reproduce, manufacture, print, distribute, sell, market, promote, advertise and/or otherwise exploit the Simone materials; (c) a judicial order, under the All Writs Act, 28 U.S.C. § 1651, the law of implied easements and in the exercise of the Court's general equitable jurisdiction, requiring Andrew B. Stroud and SPE to identify and make all Simone Materials available for digital copying and/or non-destructive restoration by the Estate; and (d) enforcement of the portions of the injunctions entered in the prior actions that require the enjoined parties to deliver up to the Estate each and every recording, and all physical elements thereof; (2) for conversion as a result of Andrew B. Stroud's and SPE's unlawful exercise of dominion and control over Simone Materials that are the Estate's property; (3) for replevin, seeking judgment of possession and restitution as to Simone Materials wrongfully retained by Andrew B. Stroud and SPE; and (4) for an order that Andrew B. Stroud and SPE account for all profits, gains and advantages derived from their acts of conversion, infringement and for their other violations of law as well as a full accounting of any and all assets ostensibly owned by them or in their possession, custody or control, including any transactions, acquisitions or transfers by them relating to Nina Simone. *Id.* at 12-23.

**C.     The Transfer and Stay of *Stroud v. Castle Rock***

On July 2, 2009, Andrew B. Stroud and SPE moved to transfer venue of the *Stroud v. Castle Rock* action to the Northern District of California under 28 U.S.C. § 1404(a). Dkt. No. 20, No. 07-cv-08638. On August 4, 2009, the District Court for the Southern District of New York granted the motion, concluding that the outcome in the *Brown v. Stroud* action will be dispositive of the claims at issue in *Stroud v. Castle Rock* because the "Just

Case No. 11-cv-05822 JSW (NC)
REPORT AND RECOMMENDATION ON
MOTION FOR DEFAULT JUDGMENT

4

1   in Time" sound recording is but one of numerous sound recordings whose copyright

2   ownership is at issue in the *Brown v. Stroud* action.  Dkt. No. 105 at 2, 36-40, No. 09-cv-

3   03796 JSW; Dkt. No. 33 at 2-3, No. 07-cv-08638 (S.D.N.Y).  After the transfer, on

4   November 13, 2009, this Court related *Stroud v. Castle Rock* to *Brown v. Stroud*.  Dkt. No.

5   91, No. 08-cv-02348.

6       On December 7, 2009, counsel for Andrew B. Stroud and SPE moved to withdraw.

7   Dkt. No. 25, No. 09-cv-03796 JSW.  On March 25, 2010, the Court granted the motion to

8   withdraw on the condition that former counsel will continue to receive filings on behalf of

9   Andrew B. Stroud and SPE until they obtain a new lawyer.  Dkt. No. 46, No. 09-cv-03796

10  JSW.  On March 26, 2010, the Court ordered Andrew B. Stroud to show cause why this

11  action should not be stayed pending the outcome of *Brown v. Stroud*.  Dkt. No. 45, No. 09-

12  cv-03796 JSW.  On May 19, 2010, the Court issued an order staying the action upon

13  consent of the parties.  Dkt. No. 50, No. 09-cv-03796 JSW.

14      On March 18, 2011, Methven & Associates appeared as counsel for Andrew B.

15  Stroud and SPE.  Dkt. No. 53, No. 09-cv-03796 JSW.

16  **D.   The Discovery Sanctions**

17      On August 24, 2010, the Court issued a ruling on certain discovery disputes between

18  the parties in *Brown v. Stroud*, defining the scope of discovery and ordering Andrew B.

19  Stroud to produce materials consistent with the defined scope of the relevant song titles and

20  recordings.  Dkt. Nos. 204, 445 at 2, No. 08-cv-02348 JSW.  In March 2011, Andrew B.

21  Stroud produced some of the responsive recordings and counsel for the parties

22  subsequently met and conferred regarding Andrew B. Stroud's refusal to produce other

23  recordings.  Dkt. No. 445 at 2, No. 08-cv-02348 JSW.  On September 22, 2011, the Court

24  held a hearing regarding another discovery dispute, and on October 6, 2011, counsel for the

25  parties met and conferred further at the courthouse.  *Id.* at 3.

26      It later came to light that on October 1, 2011, unbeknownst to the other parties in the

27  lawsuit, ASI entered into a contract to sell the Nina Simone works in the possession of

28  Andrew B. Stroud and SPE to third party ICU Ent. Dist.  *Id.*  Following the ICU sale,

counsel for Andrew B. Stroud and SPE took the position that her client could not produce additional responsive recordings because they were no longer in their ownership, possession, or control as a result of the sale. *Id.* In an order issued July 6, 2012, by Magistrate Judge Donna M. Ryu, the Court found that Andrew B. Stroud's and SPE's violation of the August 24, 2010, discovery order resulted in the withholding of significant amounts of discovery, and that Rule 37 sanctions for failure to comply with the discovery order were therefore appropriate. *Id.* at 8. Additionally, the Court found that Andrew B. Stroud and SPE engaged in bad faith or willful misconduct justifying the issuance of sanctions against them under the Court's inherent authority. *Id.* at 9. The Court held that (1) Andrew B. Stroud and SPE are responsible for $4,706.25 in sanctions, imposed under the Court's inherent authority, payable to Brown; (2) Andrew B. Stroud and SPE and their counsel are equally responsible for paying sanctions to Sony Music in the amount of $35,989.23; and (3) Andrew B. Stroud and SPE and their counsel are equally responsible for paying sanctions to the Simone Estate in the amount of $2,070.00. *Id.* at 10-13.

**E.     The *Kelly v. Roker* Action**

On December 2, 2011, Lisa Simone Kelly, as the duly appointed administrator of the Simone Estate, commenced this action against Andrew B. Stroud, ASI, Wally Roker, and two businesses allegedly owned and controlled by Roker, ICU Ent. Dist. and Wally Roker Music (collectively, "Roker"). Dkt. No. 1. The complaint asserts several claims arising from the alleged fraudulent conveyance, disposal, and/or spoliation of the Simone Materials subject to the pending *Brown v. Stroud* litigation. *Id.* at 10-15. According to the complaint, the Simone Materials encompass Simone's personal effects including, but not limited to her writings, diaries, letters, photographs, personal effects, movies, videos and other performances, which belonged to Nina Simone during her lifetime and should have passed to her Estate after her death, and constitute a much broader universe than the claims of Sony and Brown in the Nina Simone recordings. *Id.* at 3-4, 7. The complaint alleges that the Simone Materials were appraised on September 21, 2005, by Roker, acting as an expert engaged by Andrew B. Stroud, as having a present fair market value of

1   $155,625,000.00.  *Id.* at 4.

2   On October 17, 2011, Kelly was informed by Andrew B. Stroud's counsel, Methven

3   & Associates, that all of Nina Simone's recordings in Andrew B. Stroud's possession,

4   custody, or control had been "sold" to Roker for no consideration pursuant to a "Music and

5   Artifact Agreement" dated October 1, 2011.  *Id.* at 4.  The complaint alleges that Andrew

6   B. Stroud used his dominion and control of ASI to effect the fraudulent transfers of the

7   valuable Simone Materials to ASI in order to frustrate the Simone Estate as a future

8   judgment creditor.  *Id.* at 5.  The complaint further alleges that, at Andrew B. Stroud's

9   direction, ASI's "sale" of the Simone Materials to Roker was done to defraud the Simone

10  Estate as a probable judgment creditor and to further deplete the assets that the Simone

11  Estate would be able to attach.  *Id.*  Based on these facts, the Simone Estate asserts claims

12  for fraudulent transfer, conversion and misappropriation against ASI, Andrew B. Stroud,

13  and Roker, and claims for accounting and declaratory relief against Roker and ASI.  On

14  December 20, 2011, the Court issued an order finding this action related to *Brown v.*

15  *Stroud*.  Dkt. No. 6.

16  The summons and complaint were served on Roker on December 6, 2011, by

17  substitute service pursuant to Federal Rule of Civil Procedure 4(e)(2)(B).  Dkt. Nos. 5, 9.

18  Roker failed to answer or otherwise appear in this action.  Dkt. No. 134 ¶¶ 5-6.  The

19  Simone Estate moved for entry of default against Roker, and the Clerk of the Court entered

20  default on January 5, 2012.  Dkt. Nos. 9, 10.

21  On January 10, 2012, Andrew B. Stroud and ASI answered the complaint.  Dkt. No.

22  11.  Additionally, ASI counterclaimed against the Simone Estate, asserting claims for (1)

23  declaratory judgment; (2) copyright infringement; (3) vicarious copyright infringement; (4)

24  contributory copyright infringement; and (5) copyright infringement under California law.

25  *Id.*

26  **F.    The Substitution of Scarlett Stroud and the Imposition of Sanctions**

27  On May 4, 2012, Methven & Associates moved to withdraw as counsel for Andrew

28  B. Stroud, ASI, and SPE.  Dkt. No. 61.  On July 14, 2012, Andrew B. Stroud passed away.

Dkt. Nos. 447, No. 08-cv-02348 JSW; 155 at 30.  On July 26, 2012, ASI was dissolved.

Dkt. Nos. 155 at 17, 66-67; 82.  On August 24, 2012, Brown and the Simone Estate moved

to substitute Andrew B. Stroud's surviving spouse designated as sole beneficiary and

executrix in his will, Scarlett Stroud, in the decedent's place in both *Brown v. Stroud* and

*Kelly v. Roker*.  Dkt. No. 86 at 5.  On October 4, 2012, the Court granted the motion as

unopposed, substituting Scarlett Stroud for Andrew B. Stroud.  Dkt. No. 98.

On October 12, 2012, District Court Judge Jeffrey S. White ordered that the

discovery sanctions be paid in full by October 26, 2012.  Dkt. No. 101.  On October 31,

2012, the Court granted Methven & Associates' motion to withdraw as counsel upon the

condition that Methven & Associates continue to receive service of all documents for ASI

and SPE until substitute counsel makes an appearance or until ASI and SPE are terminated

as parties.  Dkt. No. 104 at 2-3.

The Court further admonished the parties that ASI and SPE are corporations and,

thus, cannot represent themselves.  *Id.* at 2.  The Court ordered ASI and SPE to show cause

as to whether they intended to find alternate counsel and, if not, "why judgment should not

be entered against them on the claims against them and why their affirmative claims should

not be dismissed for failure to prosecute."  *Id.*  The Court informed ASI and SPE that if

they needed more time to find an attorney to provide a response to the order to show cause,

the Court would consider such a request.  *Id.*  With respect to Scarlett Stroud as the

representative of the Stroud Estate, the Court noted that it was not yet clear whether she

could proceed pro se or needed to retain counsel in order to appear on behalf of the Stroud

Estate.  *Id.* at 3.  The Court informed Scarlett Stroud that an attorney must represent a

personal representative of an estate where the estate has multiple beneficiaries and

creditors.  *Id.*  The Court ordered Scarlett Stroud to show cause in writing whether she

intended to appear pro se or through new counsel, and, if she intended to proceed pro se, to

demonstrate that she was the sole beneficiary to the Stroud Estate and that there were no

other beneficiaries or creditors.  *Id.*  Alternatively, if Scarlett Stroud intended to obtain new

counsel, the Court ordered her to state by when such counsel will make an appearance on

behalf of the Stroud Estate. *Id.* at 4. The Court admonished Scarlett Stroud that her failure to timely respond to the order to show cause, and obtain new counsel if necessary, "will result in dismissal of the estate's affirmative claims for failure to prosecute and judgment being entered against the estate on the claims against it." *Id.* The Court also noted that the Stroud Estate has not paid the sanctions imposed against it and ordered Scarlett Stroud to pay the remaining sanctions by no later than November 21, 2012. *Id.* The Court admonished her that failure to comply with that order could result in further sanctions being imposed, including an order of contempt. *Id.* The October 31 order was served on Scarlett Stroud, SPE, ASI, and Robinson on November 2, 2012. Dkt. No. 105.

ASI, SPE, and Scarlett Stroud all failed to respond to the order to show cause within the deadline set by the Court. Dkt. No. 114. In an order issued January 17, 2013, the Court noted sanctions were warranted against ASI, SPE and Scarlett Stroud as the representative of the Stroud Estate, both due to their failure to respond and, based on their lack of representation by counsel, their inability to proceed in Court. *Id.* The Court observed that "[w]ith respect to the claims against ASI, SPE and the Estate of Andrew Stroud, the proper sanction is the striking of any answers that have been filed and the entry of default against them." *Id.* at 2. However, the Court found that its initial order to show cause had not provided sufficient notice of the precise sanction. *Id.* Therefore, the Court issued a further order to show cause to ASI, SPE, and Scarlett Stroud to demonstrate in writing by no later than February 5, 2013, "why the answers filed by ASI, SPE, and Andrew Stroud should not be stricken and default be entered against ASI, SPE, and the Estate of Andrew Stroud[.]" *Id.* The Court admonished ASI, SPE, and Scarlett Stroud that their failure to respond to the further order to show cause "will result in the answers filed by ASI, SPE, and Andrew Stroud being stricken and default entered against them" and that "the affirmative claims by ASI, SPE, and the Estate of Andrew Stroud . . . will be dismissed for failure to prosecute without further notice." *Id.*

In the afternoon of the day the responses to the further order to show cause were due, W. Charles Robinson, as counsel for Andrew B. Stroud, ASI, SPE, and Scarlett Stroud in

her capacity as executrix of the Stroud Estate, sought an extension of time to respond to the order to show cause on the basis that he needed time to familiarize himself with the litigation. Dkt. No. 503 at 2-6, No. 08-cv-02348 JSW. On February 14, 2013, the Court issued an order denying the request for extension and imposing terminating sanctions. Dkt. No. 124 at 5-6. The Court found that, in light of Robinson's long-time representation and involvement with Andrew B. Stroud, Scarlett Stroud, ASI, and SPE, there was no excuse for Scarlett Stroud's, ASI's, and SPE's continued delay and failure to respond to the Court's orders. *Id.* The Court further noted that despite clear and explicit orders, the sanctions imposed "due to Andrew Stroud's inappropriate gamesmanship and conduct designed to obfuscate, delay, and avoid responding to valid discovery requests in bad faith or willful misconduct still ha[d] not been paid." *Id.* Therefore, the Court found that terminating sanctions were "warranted due to the bad faith of counsel and of the Stroud parties, their repeated gamesmanship and misconduct, their blatant disregard of the Court's orders, the Court's need to manage its docket, and the need to prevent prejudice to the other parties in this litigation who have been diligently attempting to litigate these cases." *Id.* The Court dismissed "all affirmative claims by the estate of Andrew Stroud, ASI and SPE[,]" struck "any answers that have been filed by these parties" and entered default against them. *Id.* at 6. The Court ordered the parties who were defending claims by the Stroud Estate, ASI, and SPE in the three related matters to file motions for default judgment by March 15, 2013. *Id.*

On March 7, 2013, the Court granted Robinson's applications to appear pro hac vice on behalf of Scarlett Stroud and the Stroud Estate. Dkt. Nos. 127, 128. On March 18, 2013, Robinson filed a motion for reconsideration of the Court's order imposing sanctions and the related orders leading up to that order on behalf of the Stroud Estate, ASI, and SPE. Dkt. Nos. 140, 141. The motion for reconsideration argued that there was no personal jurisdiction over Scarlett Stroud on the basis that she was not properly served with the motion to substitute and that she was not properly substituted in as the representative of the Stroud Estate. Dkt. No. 141. The declaration by Robinson submitted in support of the

1    motion for reconsideration also argued that the motion for extension of time should have

2    been granted and that the default order should be vacated because there is no support for

3    the finding that Robinson has had a long-time representation and involvement with the

4    Stroud parties and there is no showing of bad faith by the Stroud parties.  Dkt. No. 140-1 at

5    7-10.  In an order issued May 8, 2013, the Court found that service on Scarlett Stroud was

6    sufficient and denied the motion for reconsideration on this ground.  Dkt. No. 168 at 2.

7    The Court further found that it should not have substituted in Scarlett Stroud as the

8    representative of the Stroud Estate until November 20, 2012, when the New York Probate

9    Court issued letters testamentary designating Scarlett Stroud as the executor of the Stroud

10    Estate.  *Id.* at 5.  Although the Court granted the motion for reconsideration to the extent

11    Scarlett Stroud was substituted in before November 20, 2012, the Court found no basis for

12    vacating the sanctions which were not imposed until after Scarlett Stroud was a proper

13    party to this action.  *Id.* at 5-6.

14    **G.     The Interpleader Action**

15         On March 8, 2013, Methven & Associates filed an action for interpleader under 28

16    U.S.C. § 1335 against Scarlett Stroud as administrator of the Stroud Estate, ASI, SPE, Lisa

17    Simone Kelly as administrator of the Simone Estate, Wally Roker d/b/a ICU Ent. Dist. and

18    d/b/a Wally Roker Music, Brown, Castle Rock Entertainment, Warner Bros. Entertainment,

19    Inc., Warner Bros. Independent Pictures, and Sony Music Entertainment, Inc. ("the

20    interpleader action").  Dkt. No. 1, No. 13-cv-01079 JSW.  The interpleader action seeks to

21    adjudicate the defendants' claims relating to ownership of property identified in an

22    attachment to the complaint which includes original audio and video recordings of Nina

23    Simone.  *Id.* ¶ 13.  The complaint alleges that, during the course of providing legal

24    representation to Andrew B. Stroud, Stroud shipped the property subject to the interpleader

25    action to Methven & Associates so that it could produce the items as discovery.  *Id.* ¶¶ 16,

26    19.  The property was not reclaimed by Andrew B. Stroud and was left in the possession of

27    Methven & Associates after Stroud passed away.  *Id.* ¶ 20.  On March 20, 2013, the Court

28    issued an order relating the interpleader action to *Stroud v. Castle Rock*, *Brown v. Stroud*,

1  and *Kelly v. Roker*.  Dkt. No. 6, No. 13-cv-01079 JSW.  On January 21, 2014, the Court

2  granted the motion of Methven & Associates for leave to deposit the property with the

3  Court.  Dkt. No. 95, No. 13-cv-01079 JSW.

4  On December 19, 2013, Judge White issued an order revoking the pro hac vice status

5  of Robinson, counsel for Scarlett Stroud as the administrator of the Stroud Estate, ASI, and

6  SPE, as a sanction for disregarding the Local Rules and orders of the Court.  Dkt. No. 86,

7  No. 13-cv-01079 JSW.  Because ASI and SPE are corporations and cannot represent

8  themselves, the Court ordered them to obtain new counsel and have new counsel file an

9  appearance by January 17, 2014.  *Id.* at 2.   The Court ordered Scarlett Stroud to provide a

10  written statement as to whether she intends to appear pro se or through new counsel by

11  January 17, 2014.  *Id.* at 2-3.

12  Scarlett Stroud, ASI, and SPE have not complied with the Court's order.  Instead, on

13  December 30, 2013, Robinson filed an appeal from the order imposing sanctions and

14  revoking his pro hac vice status.  Dkt. No. 88, No. 13-cv-01079 JSW.  On February 3,

15  2014, Robinson filed an appeal on behalf of the Stroud parties from the order granting

16  leave to deposit the property.  Dkt. No. 99, No. 13-cv-01079 JSW.  On May 14 and 15,

17  2014, the Ninth Circuit dismissed both appeals for lack of jurisdiction.  Dkt. Nos. 114, 115,

18  No. 13-cv-01079 JSW.

19  **H.    The Motion for Default Judgment**

20  On March 15, 2013, the Simone Estate filed a motion for default judgment against

21  ASI, Andrew B. Stroud, Scarlett Stroud as an individual and as administratrix of the Stroud

22  Estate, and Wally Roker individually, and d/b/a ICU Ent. Dist. and Wally Roker Music.

23  Dkt. No. 133.[1]

24  The motion and supporting documents were served by first class mail on Robinson

25  and Roker on March 15, 2013.  Dkt. No. 144.  Additionally, on March 20, 2013, the same

26  _____

27  [1] The proposed order originally submitted in support of the motion for default judgment incorrectly listed SPE as a defendant instead of ASI.  Dkt. No. 135 at 2:1-6.  The motion for default judgment

28  listed the correct defendants.  Dkt. No. 133 at 2:3-15.  The Simone Estate subsequently filed an amended proposed order correcting this error.  Dkt. No. 183 at 2:1-6.

1   documents were served by first class mail on ASI, "Attn: SCARLETT PARADIES-
2   STROUD." Dkt. No. 147.

3       On March 29, 2013, Robinson filed a single opposition to the motions for default
4   judgment filed in the related cases, *Stroud v. Castle Rock*, *Brown v. Stroud*, and *Kelly v.*
5   *Roker*, on behalf of all of the Stroud parties. Dkt. No. 155. On June 4, 2013, Judge White
6   referred the motions for default judgment in the three related cases to the undersigned
7   Magistrate Judge for a report and recommendation. Dkt. No. 170.

8       The next day after the referral of the motions for default judgment, the Stroud parties
9   filed an appeal to the Ninth Circuit in each of the three related cases. Dkt. No. 123, No.
10  09-cv-03796 JSW; Dkt. No. 567, No. 08-cv-02348 JSW; Dkt. No. 171, No. 11-cv-05822
11  JSW. The notice of appeal states that the Stroud parties are appealing the order(s) of the
12  District Court, entered in these cases on May 8, 2013, "denying Stroud's Motions for
13  reconsideration of the District Court's order substituting the Executrix for the Estate of
14  ABS along with any subsequent order(s) regarding motions for default judgment filed
15  against Stroud" in these cases "as a consequence of the denial of Stroud's Motions for
16  reconsideration." *Id.* As ordered by the undersigned, the parties moving for default
17  judgment briefed the issue of whether Stroud's notices of appeal divested the District Court
18  of jurisdiction, and the Stroud parties responded in a brief filed by Robinson. Dkt. Nos.
19  176, 179.

20      The undersigned held a hearing on the motions for default judgment on September 4,
21  2013. Dkt. No. 184. The Stroud parties did not appear at the hearing.

22      On September 10, 2013, the Ninth Circuit Court of Appeals issued its mandate
23  dismissing the appeal in *Stroud v. Castle Rock* due to counsel's failure to perfect the
24  appeal. Dkt. Nos. 135, 136, No. 09-cv-03796 JSW. On November 5 and November 26,
25  2013, the Court of Appeals issued its mandate dismissing the appeals in *Kelly v. Roker* and
26  *Brown v. Stroud*, respectively, for lack of jurisdiction, finding that they were not taken
27  from a final or otherwise appealable order. Dkt. Nos. 584, 585, No. 08-cv-02348 JSW;
28  187, 189.

1   **I.       The Report and Recommendations in *Stroud v. Castle Rock* and *Brown v.***
2            ***Stroud***

3           On March 31, 2014, the undersigned Magistrate Judge issued a report and

4   recommendation in *Stroud v. Castle Rock*, recommending to the District Court to grant

5   defendants' motion for default judgment in that case and to dismiss Andrew B. Stroud's

6   and SPE's claims for copyright infringement and unfair competition with prejudice.  Dkt.

7   No. 147, No. 09-cv-03796 JSW.

8           Additionally, on the same date, the undersigned issued a report and recommendation

9   in *Brown v. Stroud*, recommending to the District Court to grant in part and deny in part the

10  default judgment motions by Brown, the Simone Estate, and Sony Music.  Dkt. No. 596,

11  No. 08-cv-02348 JSW.  The undersigned recommended that the District Court enter default

12  judgment (1) declaring that SPE, Andrew B. Stroud, and Scarlett Stroud as administratrix

13  of the Stroud Estate, have no rights of reproduction in any Nina Simone recordings or

14  audiovisual works, but not adjudicating as between Brown, the Simone Estate, and Sony

15  Music, the ownership or possession rights to those recordings and works; (2) declaring that

16  the Simone Estate is the rightful owner of the Remaining Simone Materials[2] and that SPE,

17  Andrew B. Stroud, and Scarlett Stroud as administratrix of the Stroud Estate, have no

18  rights of reproduction in any Remaining Simone Materials; (3) permanently enjoining SPE,

19  Andrew B. Stroud, and Scarlett Stroud as administratrix of the Stroud Estate, from

20  licensing, reproducing, manufacturing, printing, distributing, selling, marketing, promoting,

21  advertising, broadcasting, publishing and/or otherwise exploiting the Remaining Simone

22  Materials; (4) declaring that SPE, Andrew B. Stroud, and Scarlett Stroud as administratrix

23  of the Stroud Estate, are bound by the permanent injunctions issued in the prior actions; (5)

24  ordering SPE, Andrew B. Stroud, and Scarlett Stroud as administratrix of the Stroud Estate,

25  to forthwith make available to Brown, the Simone Estate, and Sony Music all Nina Simone

26

27  _____
    [2] Defined in *Brown v. Stroud* as the Simone Materials not including the recordings and audiovisual
28  works which are addressed separately in the report and recommendation on the motion for default
    judgment.  *See* Dkt. No. 596 at 29-30, No. 08-cv-02348 JSW.

1  recordings and audiovisual works in their possession, custody, or control for digital

2  copying and, if appropriate, non-destructive preservation; (6) ordering all recordings and

3  audiovisual works that were or may have been recorded during the term of Nina Simone's

4  contracts with RCA to be delivered to Sony Music within thirty (30) days of entry of the

5  default judgment to be held in escrow pending determination of the ownership rights in

6  those works; (7) permanently enjoining SPE, Andrew B. Stroud, and Scarlett Stroud as

7  administratrix of the Stroud Estate, from exploiting or attempting to license or exploit any

8  Nina Simone recordings or audiovisual works; (8) ordering SPE, Andrew B. Stroud, and

9  Scarlett Stroud as administratrix of the Stroud Estate, to deliver to the Simone Estate all of

10  Remaining Simone Materials within thirty (30) days of entry of the default judgment; (9)

11  reserving jurisdiction to amend the judgment to award money damages to the Simone

12  Estate resulting from any failure of SPE, Andrew B. Stroud, and Scarlett Stroud to deliver

13  possession of any property awarded or to account; (10) ordering SPE, Andrew B. Stroud,

14  and Scarlett Stroud as administratrix of the Stroud Estate, to account for any and all

15  Remaining Simone Materials in their possession, custody, or control within thirty (30) days

16  of entry of the default judgment; (11) dismissing the Stroud parties' fourth amended

17  counterclaims in *Brown v. Stroud*; (12) entering judgment jointly and severally against

18  Andrew B. Stroud, SPE, and Scarlett Stroud as administratrix of the Stroud Estate, for

19  unpaid monetary sanctions to Brown, the Simone Estate, and Sony Music; and (13)

20  denying the request for relief against Scarlett Stroud as an individual. *Id.*

21  ## II. LEGAL STANDARD

22  The Simone Estate moves for default judgment under Federal Rule of Civil

23  Procedure 55(b). Dkt. No. 133 at 2. Default may be entered against a party who fails to

24  plead or otherwise defend an action and against whom a judgment for affirmative relief is

25  sought. Fed. R. Civ. P. 55(a). After entry of default, the Court has discretion to grant

26  default judgment on the merits of the case against a defendant against whom a default has

27  been entered, unless the defendant is a minor or an incompetent person, or is in military

28  service. Fed. R. Civ. P. 55(b); *Aldabe v. Aldabe*, 616 F.2d 1089, 1092 (9th Cir. 1980). In

1  deciding whether to grant default judgment, the Court considers the following factors:  (1)

2  the possibility of prejudice to the plaintiff; (2) the merits of the plaintiff's substantive claim;

3  (3) the sufficiency of the complaint; (4) the sum of money at stake in the action; (5) the

4  possibility of a dispute concerning material facts; (6) whether the default was due to

5  excusable neglect; and (7) the strong policy favoring decisions on the merits.  *Eitel v.*

6  *McCool*, 782 F.2d 1470, 1471-72 (9th Cir. 1986).  The factual allegations of the complaint,

7  except those concerning damages, are deemed admitted by the non-responding parties.

8  *Geddes v. United Fin. Grp.*, 559 F.2d 557, 560 (9th Cir. 1977).  "If the party against whom

9  a default judgment is sought has appeared personally or by a representative, that party or its

10 representative must be served with written notice of the application at least 7 days before

11 the hearing."  Fed. R. Civ. P. 55(b)(2).

12                                      **III. DISCUSSION**

13 **A.    Jurisdiction**

14        When presented with a motion for default judgment, the Court has "an affirmative

15 duty to look into its jurisdiction over both the subject matter and the parties."  *In re Tuli*,

16 172 F.3d 707, 712 (9th Cir. 1999).  Federal courts are courts of limited jurisdiction and are

17 presumptively without jurisdiction.  *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S.

18 375, 377 (1994).  A federal court may dismiss an action on its own motion if it finds that it

19 lacks subject matter jurisdiction over the action.  *Fiedler v. Clark*, 714 F.2d 77, 78-79 (9th

20 Cir. 1983); *see also* Fed. R. Civ. P. 12(h)(3) ("If the court determines at any time that it

21 lacks subject-matter jurisdiction, the court must dismiss the action.").

22        Additionally, the Court must "assess the adequacy of the service of process on the

23 party against whom default is requested."  *Bank of the West v. RMA Lumber Inc.*, No. 07-

24 cv-06469 JSW (EMC), 2008 WL 2474650, at *2 (N.D. Cal. June 17, 2008).  "Without a

25 proper basis for jurisdiction, or in the absence of proper service of process, the district court

26 has no power to render any judgment against the defendant's person or property unless the

27 defendant has consented to jurisdiction or waived the lack of process."  *S.E.C. v. Ross*, 504

28 F.3d 1130, 1138-39 (9th Cir. 2007).

1   After reviewing the pleadings in connection with the motion for default judgment, the

2   undersigned Magistrate Judge ordered the Simone Estate to brief the issue of the possible

3   lack of federal subject matter jurisdiction in this case. Dkt. No. 191. The undersigned

4   noted that, with the exception of the declaratory relief claim, all other claims asserted in the

5   Simone Estate's complaint are based on state law. *Id.* It is well established that the

6   Declaratory Judgment Act, 28 U.S.C. § 2201, is not an independent basis for federal

7   jurisdiction. *Skelly Oil Co. v. Phillips Petroleum Co.*, 339 U.S. 667, 671 (1950); *N. Cnty.*

8   *Commc'ns Corp. v. Cal. Catalog & Tech.*, 594 F.3d 1149, 1154 (9th Cir. 2010).

9   In its complaint, the Simone Estate alleges that the Court has subject matter

10  jurisdiction based on diversity, 28 U.S.C. § 1332. Dkt. No. 1 at 3. The complaint alleges

11  that Kelly is "an individual who resides in Florida"; Wally Roker is a citizen of California;

12  ICU Ent. Dist. and Wally Roker Music are Roker's business designees; Andrew B. Stroud

13  is a citizen of New York; and "ASI is a corporation organized under the laws of the State of

14  New York." Dkt. No. 1 at 1-2. These allegations, however, are insufficient to establish the

15  citizenship of the relevant parties for diversity purposes, because it is the citizenship of the

16  person or entity on whose behalf the action is maintained (here, the Simone Estate) that

17  controls for diversity purposes. 28 U.S.C. § 1332(c)(2) ("[T]he legal representative of the

18  estate of a decedent shall be deemed to be a citizen only of the same State as the

19  decedent."); *see also Gustafson v. zumBrunnen*, 546 F.3d 398, 400 (7th Cir. 2008) ("[T]he

20  federal diversity statute treats 'the legal representative' of a decedent's estate (or the estate

21  of an infant or an incompetent) as a citizen of the same state as the decedent."). The

22  complaint here fails to allege the citizenship of the decedent, Nina Simone.

23  In response to the Court's order to address this jurisdictional question, the Simone

24  Estate filed a further brief, asserting that its claims in *Kelly v. Roker* "are grounded in the

25  Copyright Act and diversity as against Defendants Andrew B. Stroud and Andy Stroud, Inc.

26  ("ASI")." Dkt. No. 192 at 5:8-10, 9:13-14:5. The Court will address these asserted

27  jurisdictional bases in turn.

28  //

1        **1.      Federal Question Jurisdiction**

2            **a.      Well-Pleaded Complaint Rule**

3        Federal courts have exclusive jurisdiction over "any civil action arising under any Act

4  of Congress relating to . . . copyrights." 28 U.S.C. § 1338.  But a case does not arise under

5  federal copyright law merely because the subject matter of the action involves or affects a

6  copyright.  *Topolos v. Caldewey*, 698 F.2d 991, 993 (9th Cir. 1983).  An action "'arises

7  under' the Copyright Act if and only if the complaint is for a remedy expressly granted by

8  the Act, e.g., a suit for infringement or for the statutory royalties for record reproductions,

9  or asserts a claim requiring construction of the Act . . . or, at the very least and perhaps

10  more doubtfully, presents a case where a distinctive policy of the Act requires that federal

11  principles control the disposition of the claim." *Scholastic Entm't, Inc. v. Fox Entm't*

12  *Group, Inc.*, 336 F.3d 982, 986 (9th Cir. 2003) (quoting *T.B. Harms Co. v. Eliscu*, 339 F.2d

13  823, 828 (2d Cir. 1964)).  Furthermore, "whether a case is one arising under . . . a law . . . of

14  the United States . . . must be determined from what necessarily appears in the plaintiff's

15  statement of his own claim in the [complaint], unaided by anything alleged in anticipation

16  or avoidance of defenses . . . ." *Vestron, Inc. v. Home Box Office, Inc.*, 839 F.2d 1380, 1381

17  (9th Cir. 1988) (quoting *Franchise Tax Bd. of Cal. v. Constr. Laborers Vacation Trust*, 463

18  U.S. 1, 10 (1983)).  If a complaint makes out a "bona fide infringement claim, then the

19  federal court has jurisdiction." *Vestron*, 839 F.2d at 1381-82.  When ownership is the sole

20  question for consideration, however, federal courts are without jurisdiction. *Topolos*, 698

21  F.2d at 994.

22        Here, in addition to its request for declaratory relief, the Simone Estate has asserted

23  three state law claims in its complaint: fraudulent transfer in violation of California Civil

24  Code § 3439.04, Dkt. No. 1 at 12:5; misappropriation and conversion, *id.* at 13:21; and

25  accounting against Roker and ASI, *id.* at 15:2.  As the complaint alleges no bona fide

26  infringement claim, and does not seek any remedy expressly provided under the Copyright

27  Act, the Simone Estate cannot satisfy the first prong of the *T.B. Harms* test for establishing

28  federal question jurisdiction.  Although the Simone Estate asserts in its brief regarding

Case No. 11-cv-05822 JSW (NC)
REPORT AND RECOMMENDATION ON                              18
MOTION FOR DEFAULT JUDGMENT

1  subject matter jurisdiction that "the complaint in *Kelly v. Roker* seeks remedies expressly

2  granted by the Copyright Act," in the form of "[an] injunction, damages costs, and

3  attorneys' fees, which are provided for in §§ 502, 504, and 505 of the Copyright Act," the

4  complaint itself is void of such allegations.  Dkt. No. 192 at 10:25-27.

5       Furthermore, the Simone Estate's contention in its brief on subject matter jurisdiction

6  that the "copyright ownership dispute was property [sic] brought against all defendants

7  because the subject of the ASI/Roker agreement was a purported sale of the copyrights in

8  dispute," and on that basis, "the action arises under the Copyright Act and triggers exclusive

9  jurisdiction," is without merit.  Dkt. No. 192 at 11:12-14.  The Copyright Act does not

10  specify a cause of action to determine ownership, *Scholastic Entm't*, 336 F.3d at 986

11  (quoting *T.B. Harms*, 339 F.2d at 827), and the conditions for valid assignment of a

12  Copyright do not raise a federal question, *see, e.g.*, *Dolch v. United Cal. Bank*, 702 F.2d

13  178, 180 (9th Cir. 1983) (rejecting plaintiff's assertion that because the court had to

14  determine whether section 28 of the Act permitted an assignment of copyright to be given

15  as a gift, her claim required construction of the Copyright Act).

16       Absent a claim for a remedy expressly granted by the act, courts look to whether the

17  complaint requires a construction or interpretation of the Copyright Act to determine if

18  federal jurisdiction is available.  *See, e.g.*, *Jasper v. Bovina Music, Inc.*, 314 F.3d 42, 46 (2d

19  Cir. 2002) (citing *T.B. Harms*, 339 F.2d at 828) (holding federal jurisdiction existed when

20  court had to interpret whether a contract assigning copyrights satisfied the requirements of

21  § 204(a)).  However, if a complaint poses a question that is not one that requires an

22  interpretation of the Copyright Act or weighing of its policies, such as "[c]ontract questions

23  that depend on common law or equitable principles[,]" the case "belong[s] in state court."

24  *Dolch*, 702 F.2d at 180.

25       Here, the Simone Estate in its complaint alleges that the dispute "arises from the

26  fraudulent conveyance(s), disposal, and/or spoliation of the actual *res* of [sic] Stroud Action

27  — the very same Nina Simone Materials and Nina Simone Recordings (as defined in the

28  related Stroud Action . . .) which are the subject of that separate, ongoing litigation."  Dkt.

No. 1 ¶ 11.  The Simone Estate asserts that the rights in the Simone Materials belonged exclusively to Nina Simone, and that, after her death, the Simone Estate always has been the rightful owner of the copyrights and other intellectual property rights to the Simone Materials and the owner of the physical objects in which such intellectual property is embodied. *Id.* ¶¶ 12, 39.  However, the Simone Estate seeks to rewrite its complaint in its brief on the issue of subject matter jurisdiction, alleging that the complaint "asserts a claim requiring construction of the Copyright Act by invoking the following issues: initial ownership of the copyrights under 17 U.S.C. § 201(a), works made for hire under 17 U.S.C. § 201(b), and execution of transfers of copyright ownership under 17 U.S.C. § 204(a)." Dkt. No. 192 at 10:27-11:1.

First, this rationale fails because the Simone Estate does not refer to §§ 201(a), 201(b), and 204(a) in its complaint.  Moreover, even assuming the Simone Estate had mentioned these statutes, §§ 201(a) and 201(b) would be inapplicable to this action, where the controversy stems from the "Music and Artifact Agreement," which was a "purported sale of the copyrights in dispute" and "*res*" in the *Brown v. Stroud* action.  The Simone Estate's claims seeking to void "Music and Artifact Agreement" between Roker and ASI do not require an interpretation of 17 U.S.C. § 201(a) (stating that, "[c]opyright in a work protected under this title vests initially in the author or authors of the work.  The authors of a joint work are coowners of copyright in the work."), nor does the "Music and Artifact Agreement" have anything to with whether the work was made for hire, *see id.* at § 201(b) (stating that "[i]n the case of a work made for hire, the employer or other person for whom the work was prepared is considered the author for the purposes of this title, and, unless the parties have expressly agreed otherwise in a written instrument signed by them, owns all of the rights comprised in the copyright.").  Instead, the Simone Estate is challenging only the legitimacy of the transfer from ASI to Roker.

Furthermore, the Court need not interpret 17 U.S.C. § 204(a), which provides that, "[a] transfer of copyright ownership, other than by operation of law, is not valid unless an instrument of conveyance, or a note or memorandum of the transfer, is in writing and signed

1    by the owner of the rights conveyed or such owner's duly authorized agent."  Here, the

2    writing requirement is satisfied as neither party is contesting the existence of a written

3    contract between Roker and ASI for the transfer of the Simone Materials.  What is

4    contested, is whether the "Music and Artifact Agreement" constitutes a fraudulent

5    conveyance, conversion, and/or misappropriation of the Simone Materials.  Dkt. No. 1

6    ¶¶ 14-16.   As the Second Circuit has noted, "almost every case involving contract

7    interpretation, appropriate for state court determination, could be recharacterized as a case

8    appropriate for a federal court simply by framing the issue to be whether the disputed

9    contract qualified as a writing within the meaning of section 204(a)[, h]owever, the line

10   drawn in *T.B. Harms* cannot be obliterated by such verbal gymnastics."  *Jasper*, 314 F.3d at

11   47.

12          Finally, the Court is also not convinced that there is federal question jurisdiction over

13   the Simone Estate's declaratory relief claim.  While that claim does not provide an

14   independent basis for federal jurisdiction, "[f]ederal courts have regularly taken original

15   jurisdiction over declaratory judgment suits in which, if the declaratory judgment defendant

16   brought a coercive action to enforce its rights, that suit would necessarily present a federal

17   question."  *Franchise Tax Bd.*, 463 U.S. at 19.  As the Ninth Circuit has observed, the

18   Declaratory Judgment Act "was enacted to afford an added remedy to one who is uncertain

19   or [sic] his rights and who desires an early adjudication without having to wait until he is

20   sued by his adversary."  *Levin Metals Corp. v. Parr-Richmond Terminal Co.*, 799 F.2d

21   1312, 1315 (9th Cir. 1986).  "When a declaratory judgment plaintiff asserts *a claim that is*

22   *in the nature of a defense to a threatened or pending action*, the character of the threatened

23   or pending action determines whether federal question jurisdiction exists with regard to the

24   declaratory judgment action."  *Id.* (emphasis added).

25          The first claim for relief asserted in the complaint is titled "Declaratory Judgment

26   Against Roker and ASI, 'Agreement' to Purchase NSM is Void ab initio."  Dkt. No. 1 at 10.

27   As an initial matter, the Simone Estate's declaratory relief claim does not appear to be "in

28   the nature of a defense to a threatened or pending action" by Roker or ASI.  While the

1   Simone Estate is not bringing a coercive claim for copyright infringement in this action, it

2   claims to be the exclusive owner of the rights in the Simone Materials. *Id.* ¶ 39.

3        Moreover, it does not appear that the Simone Estate's complaint anticipates a

4   coercive action by the declaratory judgment defendants, Roker and ASI, that would arise

5   under federal law.  Here, the Simone Estate's complaint alleges that "[t]his lawsuit arises

6   from the fraudulent conveyance(s), disposal and/or spoliation of the actual *res* of Stroud

7   Action."  Dkt. No. 1 ¶ 11.  The Simone Estate's claims thus are focused on voiding the

8   "Music and Artifact Agreement" and restoring the status quo as to the ownership of the

9   Simone Materials in light of the pending *Brown v. Stroud* litigation. *Id.* ¶¶ 44-46.  The

10  complaint does not assert that Roker or ASI have claimed that the Simone Estate has

11  infringed their copyrights in the Simone Materials.  While the complaint alleges that

12  Andrew B. Stroud and SPE filed various claims against the Simone Estate in the *Brown v.*

13  *Stroud* action, including copyright infringement of the Nina Simone Masters, it also alleges

14  that the Court dismissed with prejudice all of Stroud's claims against the Simone Estate. *Id.*

15  ¶¶ 32-33, 37.  Furthermore, while the declaratory relief claim asserts that "there is an

16  imminent threat that [Roker] will attempt to publish and claim the copyright" to property

17  belonging to the Simone Estate, *Id.* ¶ 42, the Simone Estate is not seeking a declaration of

18  non-infringement, or asserting any factual basis to infer that Roker has threatened to sue the

19  Simone Estate for copyright infringement.

20       The complaint also does not allege that ASI has threatened to sue the Simone Estate

21  for copyright infringement; instead, it alleges that ASI has transferred the Simone Materials

22  to Roker.  Dkt. No. 1 ¶ 40.  Accordingly, as alleged in the Simone Estate's complaint, the

23  dispute in *Kelly v Roker* is not whether any copyrights have been infringed, but rather,

24  whether the agreement between ASI and Roker purporting to transfer rights in the Simone

25  Materials constitutes a fraudulent transfer that should be set aside.  Therefore, the complaint

26  does not appear to anticipate claims by Roker or ASI seeking remedies for copyright

27  infringement, or raising an issue requiring interpretation of the Copyright Act or other

28  federal law.

Case No. 11-cv-05822 JSW (NC)
REPORT AND RECOMMENDATION ON            22
MOTION FOR DEFAULT JUDGMENT

1

### b.   Complete Preemption Rule

2      Typically, for a federal court to have subject matter jurisdiction in the absence of

3  diversity, a federal question must be presented on the face of the plaintiff's properly pleaded

4  complaint. *Caterpillar Inc. v. Williams*, 482 U.S. 386, 392 (1987).  However, there exists

5  an "independent corollary" to this well-pleaded complaint rule, known as the "complete

6  pre-emption doctrine." *Id.* at 393.  Under the complete pre-emption doctrine, the Court has

7  concluded that, sometimes, the preemptive force of a statute is so "extraordinary" that it

8  "converts an ordinary state common-law complaint into one stating a federal claim for

9  purposes of the well-pleaded complaint rule." *Id.*  "Once an area of state law has been

10  completely preempted, any claim purportedly based on that preempted state law is

11  considered, from its inception, a federal claim, and therefore arises under federal law."

12  *Galvez v. Kuhn*, 933 F.2d 773, 775-76 (9th Cir. 1991) (quoting *Caterpillar*, 482 U.S. at

13  393).  Though the parties here have not addressed the issue of complete preemption, courts

14  have raised the complete preemption doctrine sua sponte as a basis to determine whether

15  subject matter jurisdiction exists.  *See, e.g.*, *Am. Family Mut. Ins. Co. v. Hollander*, 705

16  F.3d 339, 359 (8th Cir. 2013); *Richards v. Appalachian Power Co.*, 836 F. Supp. 2d 436,

17  441 n.3 (S.D.W. Va. 2011).

18      The Copyright Act's preemption statute, § 301, has been determined to have complete

19  preemptive power.  *See Jules Jordan Video, Inc. v. 144942 Canada Inc.*, 617 F.3d 1146,

20  1152 (9th Cir. 2010) ("Section 301 of the Act provides for exclusive jurisdiction over rights

21  that are equivalent to any of the exclusive rights within the general scope of copyright as

22  specified in the Act.").  A state law cause of action is preempted by the Copyright Act if

23  two elements are satisfied: (1) "the work involved must fall within the 'subject matter' of

24  the Copyright Act as set forth in 17 U.S.C. §§ 102 and 103"; and (2) "the rights that a

25  plaintiff asserts under state law must be 'rights that are equivalent' to those protected by the

26  Copyright Act." *Kodadek v. MTV Networks, Inc.*, 152 F.3d 1209, 1212 (9th Cir. 1998)

27  (citations omitted); *see also Jules Jordan Video*, 617 F.3d at 1152-53.  The Court examines

28  these requirements in turn.

The Court finds that the first prong is satisfied. 17 U.S.C. § 102(a) provides that "[c]opyright protection subsists . . . in original works of authorship fixed in any tangible medium of expression." Works of authorship include categories such as literary, musical, pictorial, audiovisual works as well as sound recordings. *See id.* Here, the Simone Materials alleged to have been fraudulently conveyed include recordings, unpublished diaries, photographs, movies, videos, other performances, audiovisual works, and other personal property. Dkt. No. 1 at 3-4, 7. Accordingly, the Simone Estate's complaint addresses works that fall within the subject matter of the Copyright Act.

The Court must then determine whether the rights the Simone Estate asserts here are equivalent to those protected by the Copyright Act. *See* 17 U.S.C. § 106. "To determine whether a plaintiff's state-law claim seeks to assert rights that are equivalent to those protected by the Copyright Act, a court must analyze the elements of the state-law cause of action to see if the right defined by state law may be abridged by an act which in and of itself would infringe one of the exclusive rights in the Act." *Firoozye v. Earthlink Network*, 153 F. Supp. 2d 1115, 1125 (N.D. Cal. 2001). If there is an "extra element" required by the state cause of action in place of, or in addition to, the acts of reproduction, performance, distribution, or display, "the 'extra element' required by state law changes the nature of the action so that it is qualitatively different from a copyright infringement claim, [and] the state-law claim is not preempted." *Id.* (citing *Wrench LLC v. Taco Bell Corp.*, 256 F.3d 446, 455 (6th Cir. 2001); *Summit Mach. Tool Mfg. Corp. v. Victor CNC Sys., Inc.*, 7 F.3d 1434, 1441 (9th Cir. 1993)); *see also Oddo v. Ries*, 743 F.2d 630, 635 (9th Cir. 1984) ("[I]f violation of the state right is predicated upon an act incorporating elements beyond mere reproduction or the like, . . . there is no preemption." (internal quotation marks and citation omitted)). The Court will address each cause of action to determine whether the Simone Estate has asserted rights equivalent to those protected by the Copyright Act.

### i.    Misappropriation and Conversion Claim

The Simone Estate seeks relief based on its claim of misappropriation and conversion of the Simone Materials. Dkt. No. 1 at 13-14, 16:19-17:10. If a plaintiff's conversion claim

seeks the return of tangible property, this constitutes an extra element that is not preempted as the Copyright Act provides no such remedy.  *See, e.g.*, *Oddo*, 743 F.2d at 635 (conversion claim not preempted where it alleged conversion of papers comprising a manuscript, because the "[c]onversion of tangible property involves actions different from those proscribed by the copyright laws . . . ."); *Firoozye*, 153 F. Supp. 2d at 1130 (describing that conversion relates to interference with tangible rather than intangible property rights and, hence, may be held immune from pre-emption under the Copyright Act).

However, if a claim for conversion is seeking damages for the interference with an intangible property right, such as "from a defendant's reproduction of a work—and not the actual return of a physical piece of property—the claim is preempted." *Firoozye*, 153 F. Supp. 2d at 1130; *see also Dielsi v. Falk*, 916 F. Supp. 985, 992 (C.D. Cal. 1996). Similarly, a claim of misappropriation is equivalent to protection under the Copyright Act where the claim "seek[s] damages for the unauthorized *reproduction* of the works and not just the unauthorized *possession* or use of a specific piece of property." *Firoozye*, 153 F. Supp. 2d at 1130.  *See also Ritchie v. Williams*, 395 F.3d 283, 289 (6th Cir. 2005) (holding that to the extent that defendants sought relief under theories such as "unjust enrichment, misrepresentation, conversion, and injunctive relief against further misappropriation of income derived from the songs" in dispute, the "District Court did not err in recharacterizing these claims as copyright claims.").  Claims for conversion and misappropriation can be preempted in part.  *See, e.g.*, *Meridian Project Sys., Inc. v. Hardin Constr. Co., LLC*, No. 04-cv-2728, 2006 WL 1062070, at *5 (E.D. Cal. Apr. 21, 2006); *Spear Mktg., Inc. v. BancorpSouth Bank*, No. 12-cv-3583, 2013 WL 2149570, at *7-8 (N.D. Tex. May 16, 2013).

Here, the Simone Estate alleges that defendants exercised unlawful dominion and control of the Simone Materials, to which the Simone Estate claims it is "entitled to immediate possession."  Dkt. No. 1 ¶¶ 57-59, at 16:19-17:10.  To the extent the Simone Estate seeks return of the Simone Materials, this constitutes an "extra element" that is not

equivalent to rights provided by the Copyright Act.  Moreover, the Simone Estate does not allege that defendants have actually reproduced, distributed, or displayed the materials. Indeed, the complaint only states that "there is an imminent threat that he [Roker] will attempt to publish and claim the copyright to those items." *Id.* at 11:2-3.  The complaint makes no mention that the Simone Materials have in any way been reproduced, but instead alleges only that defendants have "deprived Plaintiff of the possession of the property . . . thereby misappropriating and converting Plaintiff's property to his own use and benefit." *Id.* at 14:1-3.  Because the Simone Estate seeks the return of the Simone Materials themselves, and has failed to allege any unauthorized reproduction of the Simone Materials, the Simone Estate's conversion and misappropriation claims do not assert rights that are equivalent to those protected by the Copyright Act and are thus not preempted in full or in part.

#### ii.        Fraudulent Transfer Claim

The Simone Estate also asserts a claim for the fraudulent transfer of the Simone Materials.  Dkt. No. 1 ¶ 49.  A fraudulent conveyance is "a transfer by the debtor of a property to a third person undertaken with the intent to prevent a creditor from reaching that interest to satisfy its claim." *Kirkeby v. Super. Ct. of Orange Cnty.*, 33 Cal. 4th 642, 648 (2008); *see also* Uniform Fraudulent Transfer Act ("UFTA"), Cal. Civ. Code §§ 3439-3439.12.  "A transfer of assets made by a debtor is fraudulent as to a creditor whether the creditor's claim arose before or after the transfer, if the debtor made the transfer (1) with an actual intent to hinder, delay, or defraud any creditor, or (2) without receiving reasonably equivalent value in return, and either (a) was engaged in or about to engage in a business or transaction for which the debtor's assets were unreasonably small, or (b) intended to, or unreasonably believed, or reasonably should have believed, that he or she would incur debts beyond his or her ability to pay as they became due." *Kirkeby*, 33 Cal. 4th at 648; *see also* Cal. Civ. Code § 3439.04(a).

Here, the Simone Estate's fraudulent transfer action does not protect rights equivalent to the rights of reproduction, adaptation, publication, performance, and display because an

infringement of one of these rights would not by itself constitute a fraudulent transfer as it would not satisfy the required extra element of intent to defraud a creditor. While this Court is not aware of any cases addressing whether a fraudulent transfer claim would be preempted under the Copyright Act, courts have held that "[t]he element of misrepresentation or deception 'is no part of a cause of action for copyright infringement' and is therefore not preempted" as the requirement of such intent constitutes an extra element. *Firoozye*, 153 F. Supp. 2d at 1128 (citing 1 *Nimmer on Copyright* § 1.01[B][1][e], at 1-27; *Valente-Kritzer Video v. Pinckney*, 881 F.2d 772, 776 (9th Cir. 1989)). Accordingly, the Simone Estate's fraudulent transfer claim is not preempted.

### iii.    Accounting Claim

Finally, the Simone Estate brings a claim for accounting. Dkt. No. 1 at 15, 17:11-21. To state a claim for accounting, a plaintiff needs to show (1) a relationship between plaintiff and defendant, such as a fiduciary relationship, that calls for an accounting; and (2) that defendant owes a balance to plaintiff that cannot be calculated without an accounting from the court. *See EMC Corp. v. Sha*, No. 13-cv-0118 EJD, 2013 WL 4399025, at *6 (N.D. Cal. Aug. 13, 2013) (citations omitted); *Teselle v. McLoughlin*, 173 Cal. App. 4th 156, 179-80 (2009).

Actions for accounting have been construed to not implicate the Copyright Act or its protections, and thus cannot confer federal jurisdiction. *See, e.g.*, *Oddo*, 743 F.2d at 633, n.2. In *Oddo*, the Ninth Circuit determined that "the duty to account does not derive from the copyright law's proscription of infringement[;] [r]ather, it comes from 'equitable doctrines relating to unjust enrichment and general principles of law governing the rights of co-owners.'" *Id.* (citation omitted). *See also Gaiman v. McFarlane*, 360 F.3d 644, 652 (7th Cir. 2004) (holding "[w]hen co-ownership is conceded and the only issue therefore is the contractual, or in the absence of contract the equitable, division of the profits from the copyrighted work, there is no issue of copyright law and the suit for an accounting of profits therefore arises under state rather than federal law." (citations omitted)). Accordingly, because the Simone Estate's claim for an accounting does not protect rights equivalent to

1    those protected by the Copyright Act, it is not subject to complete preemption for the

2    purposes of establishing federal jurisdiction.

3         In conclusion, the undersigned Magistrate Judge finds that there is no independent

4    basis for federal question jurisdiction over the Simone Estate's complaint under either the

5    well-pleaded complaint rule or complete preemption.

6    **2.    Diversity Jurisdiction**

7         To establish citizenship for diversity purposes, a natural person must be both (1) a

8    citizen of the United States; and (2) a domiciliary of one particular state.  *Kantor v.*

9    *Wellesley Galleries, Ltd.*, 704 F.2d 1088, 1090 (9th Cir. 1983).  Thus, an American citizen

10   who is domiciled in a foreign country is not a citizen of any state for purposes of §

11   1332(a)(1) or an alien for the purposes of § 1332(a)(2), and thus cannot sue or be sued in

12   federal court on the basis of diversity jurisdiction.  *Newman-Green, Inc. v. Alfonzo–*

13   *Larrain*, 490 U.S. 826, 828 (1989); *see also Brady v. Brown*, 51 F.3d 810, 815 (9th Cir.

14   1995); *Büchel-Ruegsegger v. Büchel*, 576 F.3d 451, 454-55 (7th Cir. 2009).

15        Even though a party may have multiple places of residence, she may only have one

16   domicile at a given time.  *Williamson v. Osenton*, 232 U.S. 619, 625 (1914).  "A person is

17   'domiciled' in a location where he or she has established a 'fix habitation or abode in a

18   particular place, and [intends] to remain there permanently or indefinitely,'"  *Lew v. Moss*,

19   797 F.2d 747, 749-50 (9th Cir. 1986).  To determine domicile, the Ninth Circuit applies the

20   analysis of "[c]ourts in other jurisdictions," which "have held that the determination of an

21   individual's domicile involves a number of factors (no single factor controlling), including:

22   current residence, voting registration and voting practices, location of personal and real

23   property, location of brokerage and bank accounts, location of spouse and family,

24   membership in unions and other organizations, place of employment or business, driver's

25   license and automobile registration, and payment of taxes."  *Id.* at 750; *see also Bruton v.*

26   *Shank*, 349 F.2d 630, 632 n.2 (8th Cir. 1965) (stating that courts also consider

27   declarations).  Domicile is evaluated in terms of objective facts, and statements of intent

28   are entitled to little weight when in conflict with the facts.  *Lew*, 797 F.2d at 750.  The

1    burden of establishing federal jurisdiction is on the party invoking federal jurisdiction.

2    *United States v. Marks*, 530 F.3d 799, 810 (9th Cir. 2008).

3          In response to the Court's order to address the issue of diversity jurisdiction, the

4    Simone Estate argued that, despite the fact that Nina Simone was in France at the time she

5    died, she remained a citizen of the United States and a domiciliary of California.  Dkt. Nos.

6    192 at 8-9; 203 at 17:19-20.  The Simone Estate submitted two declarations by Brown, the

7    plaintiff in *Brown v. Stroud*, as Nina Simone's lawyer and friend, where he states that he

8    met Nina Simone in 1987 and that "[a]t all times [he] knew her she maintained a permanent

9    home in California."  Dkt. Nos. 192-1, 195.

10          On January 22, 2014, after his pro hac vice status was revoked by Judge White,

11   Robinson filed a response to the Simone Estate's brief on behalf of the Stroud parties,

12   arguing that the Court has no federal question or diversity jurisdiction over this case.  Dkt.

13   Nos. 86, No. 13-cv-01079 JSW; 194.  The Stroud parties assert that Brown's statements are

14   biased and inconsistent with numerous statements made by Nina Simone that she never

15   intended to return to the United States for the remainder of her life.  They submit a

16   declaration by Scarlett Stroud, attaching excerpts from Nina Simone's autobiography "I Put

17   a Spell on You."  Dkt. Nos. 194 at 11:11-28; 194-3.

18          Because the undersigned was not convinced based on the written submissions that the

19   Simone Estate had provided sufficient evidence in support of its contention that Nina

20   Simone was a domiciliary and therefore a citizen of California at the time of her death, the

21   Court held an evidentiary hearing on the issue of domicile on April 16, 2014.  Dkt. Nos.

22   197, 207.  The defendants did not appear.  At the hearing, Brown made additional

23   statements offered in support of the Simone Estate's contention that Nina Simone was a

24   domiciliary of California at the time of her death.  Aside from Brown's statements, no other

25   evidence was presented at the hearing by the Simone Estate or any other party.

26          Prior to the hearing, the Simone Estate submitted a supplemental brief arguing that

27   Nina Simone "never changed her domicile from California" and that although Nina Simone

28   died in France and "had at least seven different foreign addresses between 1990 and 2003,

Case No. 11-cv-05822 JSW (NC)
REPORT AND RECOMMENDATION ON                    29
MOTION FOR DEFAULT JUDGMENT

the evidence is uncontradicted that she never intended to remain in any of them." Dkt. No. 203 at 16-18. The brief attaches a third declaration by Brown, where he states that, since 1987, "Nina Simone never changed her domicile from California." Dkt. No. 204. The Simone Estate also relies on the declaration by Mark Penniman, Nina Simone's accountant since 1989, stating that Nina Simone filed California income tax returns and that her permanent home was in California. Dkt. No. 205. The Simone Estate further contends that "the Superior Court entered an order admitting Nina Simone's will to 'primary administration,' finding that Nina Simone died a domiciliary of Los Angeles County," and that "the jurisdictional findings therein became immune from collateral attack." Dkt. No. 203 at 13-14 (citing Cal. Prob. Code § 8007(a); *Irwin v. Scriber*, 18 Cal. 499, 504 (1861)).

As a preliminary matter, the Court disagrees with the assertion that the probate court's finding that Nina Simone was a resident of California is conclusive on the issue of Nina Simone's domicile for diversity purposes. California Probate Code § 8007(a) on which the Simone Estate relies, states that, subject to certain exceptions, "an order admitting a will to probate or appointing a personal representative, when it becomes final, is a conclusive determination of the jurisdiction of the court and cannot be collaterally attacked." Cal. Prob. Code § 8007(a). While such a finding is "binding upon the whole world," this is so "for all the purposes of the administration of the estate of the deceased, including the probate of any subsequently produced will." *In re Ralph's Estate*, 185 Cal. 605, 605 (1921). The question in this case, however, is one of federal subject matter jurisdiction and does not involve the administration of Nina Simone's Estate. For this reason, the other cases cited by the Simone Estate, *see* Dkt. No. 203 at 14, are also inapposite. Moreover, a finding of residency alone is not sufficient to establish domicile for purposes of diversity jurisdiction. *See Kanter v. Warner-Lambert Co.*, 265 F.3d 853, 857 (9th Cir. 2001).

Turning to the issue of Nina Simone's domicile, despite the evidentiary hearing held by the Court on this issue, the record remains insufficient to determine that Nina Simone was a citizen of the United States and domiciliary of California at the time of her death. In support of its contention that Nina Simone was domiciled in California when she died, the

1   Simone Estate relies primarily on the testimony of Brown, who only knew Nina Simone

2   since 1987, and who is a party with financial interest in the ownership dispute concerning

3   the Simone Materials.  While Brown acknowledges having "read and heard statements Nina

4   made to the press over the years concerning her disgust with racism in this country

5   including some where she said she would never return to the United States," he simply

6   discounts those statements as "sound bites" for publicity.  Dkt. No. 204 at 5.  Brown also

7   acknowledges that Nina Simone made statements indicating she intended to return to

8   Liberia, but he stated at the hearing that he did not know of her having lived or spent any

9   significant time in Liberia.  *See* Dkt. Nos. 194-3 at 7 (excerpt from Nina Simone's

10  autobiography stating: "I had arrived in Liberia with no idea of how long I intended to stay;

11  after a few hours I knew it was going to be a long, long time - forever, if everything worked

12  out . . .  I rushed around sorting out as much as possible until I couldn't stand it any longer

13  and caught the first plane back to Liberia, back home."); 195 at 3.  While the Court does not

14  make a determination based on the excerpts from Nina Simone's autobiography, those

15  excerpts suggest that there is other potentially relevant information on the issue of Nina

16  Simone's domicile that is not in the record before this Court.  *See* Dkt. No. 194-3.  Aside

17  from Brown, no other witnesses were offered at the hearing by any other party.

18      In conclusion, based on this insufficient record, the Court is not persuaded that the

19  Simone Estate has met its burden in establishing diversity jurisdiction.

20      **3.      Supplemental and Ancillary Jurisdiction**

21      The Court next considers whether it has either supplemental or ancillary jurisdiction

22  over the claims of this case on the basis that the Court has federal subject matter jurisdiction

23  over the pending, closely related actions *Brown v. Stroud* and *Stroud v. Castle Rock*.

24      As the undersigned Magistrate Judge previously found, the Court has federal question

25  jurisdiction over the *Stroud v. Castle Rock* action.  Dkt. No. 147 at 14, No. 09-cv-03796

26  JSW.  Additionally, the Court has federal subject matter jurisdiction in the *Brown v. Stroud*

27  action based on diversity as to Brown's complaint, supplemental jurisdiction and federal

28  question jurisdiction as to the counterclaims filed by Andrew B. Stroud, SPE, and ASI, and

supplemental jurisdiction as to Brown's reply counterclaims against Andrew B. Stroud, SPE, and Sony Music, and as to the Simone Estate's counterclaims.  Dkt. No. 596 at 22-24, No. 08-cv-02348 JSW.

### a.  Supplemental Jurisdiction

The power of federal courts to exercise supplemental jurisdiction extends to "all other claims that are so related to claims in the action" when a district court has original jurisdiction "in any civil action."  28 U.S.C. § 1367(a).  The Ninth Circuit has interpreted the language of § 1367 to mean that supplemental jurisdiction must be exercised in the same action that furnishes the basis for exercise of supplemental jurisdiction, not a separate or subsequent case.  *Ortolf v. Silver Bar Mines, Inc.*, 111 F.3d 85, 86-88 (9th Cir. 1997); *see also Int'l Union of Painters & Allied Trades Dist. Council No. 78 Health & Welfare Fund v. Old Republic Sur. Co.*, No. 06-cv-2222, 2007 WL 1363135, at *1 (M.D. Fla. May 8, 2007) (rejecting argument that § 1367 provides supplemental jurisdiction over claims in a case due to the existence of subject matter jurisdiction over a related case) (collecting cases).  Accordingly, this Court does not have supplemental jurisdiction over the Simone Estate's claims in this case.

### b.  Ancillary Jurisdiction

"Congress codified much of the common-law doctrine of ancillary jurisdiction as part of 'supplemental jurisdiction' in 28 U.S.C. § 1367."  *Peacock v. Thomas*, 516 U.S. 349, 354 n. 5 (1996).  Common law ancillary jurisdiction, however, survived this codification.  *Nat'l City Mortgage Co. v. Stephen*, 647 F.3d 78, 85 (3d Cir. 2011); *Robb Evans & Assocs., LLC v. Holibaugh*, 609 F.3d 359, 363 (4th Cir. 2010); *see also United States v. Alpine Land & Reservoir Co.*, 174 F.3d 1007, 1012 n.5 (9th Cir. 1999) ("Supplemental jurisdiction under § 1367 is distinct from the equitable doctrine of ancillary jurisdiction . . . .").  "Ancillary enforcement jurisdiction is, at its core, a creature of necessity."  *Peacock*, 516 U.S. at 359.  "The basis of the doctrine of ancillary jurisdiction is the practical need to protect legal rights or effectively to resolve an entire, logically entwined lawsuit."  *Id.* at 355 (internal quotation marks and citation omitted).  The Supreme Court has recognized that "a federal court may

1   exercise ancillary jurisdiction (1) to permit disposition by a single court of claims that are,

2   in varying respects and degrees, factually interdependent; and (2) to enable a court to

3   function successfully, that is, to manage its proceedings, vindicate its authority, and

4   effectuate its decrees." *Id.* at 354.  The Supreme Court has "reserved the use of ancillary

5   jurisdiction in subsequent proceedings for the exercise of a federal court's inherent power to

6   enforce its judgments." *Id.* at 356.  The Supreme Court has also "approved the exercise of

7   ancillary jurisdiction over a broad range of supplementary proceedings involving third

8   parties to assist in the protection and enforcement of federal judgments—including

9   attachment, mandamus, garnishment, and the prejudgment avoidance of fraudulent

10  conveyances." *Id.*  Ancillary jurisdiction, however, does not extend to "subsequent

11  lawsuit[s] to impose an obligation to pay an existing federal judgment on a person not

12  already liable for that judgment." *Id.* at 357.

13       The Ninth Circuit also has recognized that post-judgment actions to avoid fraudulent

14  conveyances fall within the court's ancillary enforcement jurisdiction.  *Thomas, Head &*

15  *Greisen Employees Trust v. Buster*, 95 F.3d 1449, 1454-55 (9th Cir.1996).  This jurisdiction

16  "derives from the long-recognized principle that a federal court may assert authority over

17  non-federal claims 'when necessary to give effect to the court's judgment.'"  *Id.* at 1453

18  (citing *Finley v. United States*, 490 U.S. 545, 551 (1989)).  In *Thomas, Head*, the Ninth

19  Circuit held that the district court properly exercised ancillary jurisdiction over a judgment

20  creditor's supplementary fraudulent conveyance proceeding against judgment debtor and

21  transferees of judgment debtor's properties, even though the transferees were not parties to

22  the underlying action.  *Id.* at 554-55.  The Ninth Circuit found that the supplementary

23  proceeding to set aside the fraudulent transfers in that case was essential to prevent the

24  judgment debtor's efforts to avoid the district court's original judgment, and that the

25  judgment creditor only sought to disgorge from the transferees the property wrongfully

26  transferred to them, not to establish their liability for the original judgment.  *Id.  See also*

27  *Donell v. Kowell*, 533 F.3d 762, 769 (9th Cir. 2008) (holding that federal jurisdiction

28  existed over receiver's suit under the California UFTA because the proceeding was

ancillary to SEC enforcement action); *Oakland Cnty. v. City of Berkley*, 742 F.2d 289, 295-96 (6th Cir. 1984) (holding that, while case did not fit precisely the definitions of ancillary or pendent jurisdiction, the district court properly exercised jurisdiction over declaratory judgment complaint to settle a dispute arising out of a series of contracts where the dispute was substantially related to a separate action under the Federal Water Pollution Control Act and was properly consolidated with that action).

In this case, the claims asserted by the Simone Estate arise out of Andrew B. Stroud and ASI's alleged attempts to fraudulently transfer to a third party the Simone Materials that are the subject of the pending *Brown v. Stroud* action. In fact, the transfer occurred after the Court ruled on certain discovery disputes in *Brown v. Stroud*, ordering Andrew B. Stroud to produce materials in discovery. Dkt. Nos. 204, 445 at 2, No. 08-cv-02348 JSW. Following the transfer, counsel for Andrew B. Stroud and SPE took the position that her client could not produce additional responsive recordings because they were no longer in their ownership, possession, or control as a result of the sale. The Court found that this was a violation of its discovery order. *Id.* at 8-9. In *Kelly v. Roker*, the Simone Estate claims, with respect to the same transfer of the Simone Materials, that the transfer was done to defraud the Simone Estate as a probable judgment creditor and to further deplete the assets that the Simone Estate would be able to attach. Dkt. No. 1 ¶ 20. The Simone Estate seeks to void the transfer and obtain possession of the property. Given that the *Kelly v. Roker* case thus arises from, and is substantially intertwined with, the related actions pending in this Court, the undersigned Magistrate Judge finds that the exercise of jurisdiction over this case is necessary to enable the Court to manage its proceedings, vindicate its authority, and effectuate its decrees. Accordingly, the undersigned Magistrate Judge recommends that the District Court find that it has ancillary jurisdiction over the *Kelly v. Roker* case.

Furthermore, the District Court was not divested of jurisdiction as a result of the Stroud parties' notice of appeal. While, as a general rule, a proper notice of appeal transfers jurisdiction of a case from the district court to a court of appeals, the filing of an appeal from a non-appealable order does not divest the district court of jurisdiction. *Ruby v. Sec'y*

1   *of U. S. Navy*, 365 F.2d 385, 388-89 (9th Cir. 1966).  An order that simply enters a party's

2   default is not a final appealable order.  *Symantec Corp. v. Global Impact, Inc.*, 559 F.3d

3   922, 923 (9th Cir. 2009).  Therefore, the Stroud parties' notice of appeal from the May 8,

4   2013, order did not divest this Court of jurisdiction.  Furthermore, the Ninth Circuit Court

5   of Appeals has now issued its mandate dismissing the Stroud parties' appeal.  Dkt. Nos.

6   187, 189.

7         **4.      Personal Jurisdiction**

8         Additionally, the Court has personal jurisdiction over the parties in default.  Personal

9   jurisdiction, "simply stated, is the power of a court to enter judgment against a person."

10  *S.E.C.*, 504 F.3d at 1138.  As noted in the report and recommendation on the motions for

11  default judgment in *Brown v. Stroud*, the Court has already determined that it has specific

12  jurisdiction over Andrew B. Stroud and SPE in denying their motion to dismiss Brown's

13  amended complaint for lack of personal jurisdiction in that case.  Dkt. No. 48, No. 08-cv-

14  02348.  Andrew B. Stroud and SPE also initiated the *Stroud v. Castle Rock* action, and

15  moved to transfer venue to this Court taking the position that the outcome in the *Brown v.*

16  *Stroud* action will be dispositive of the claims at issue.  Furthermore, the Stroud parties

17  moved for reconsideration of the Court's orders leading to the entry of default, and opposed

18  the pending default judgment motion without raising an objection based on personal

19  jurisdiction (aside from the argument that the Court had no personal jurisdiction over

20  Scarlett Stroud because she was not properly served with the motion to substitute, which

21  Judge White rejected).  *See* Dkt. Nos. 140, 141, 155, 168.

22        Additionally, in *Kelly v. Roker*, Andrew B. Stroud and ASI answered the complaint,

23  and ASI counterclaimed.  Dkt. No. 11.  *See S.E.C.*, 504 F.3d at 1149 ("[A] party has

24  consented to personal jurisdiction when the party took some kind of affirmative act—

25  accepting a forum selection clause, submitting a claim, filing an action—that fairly invited

26  the court to resolve the dispute between the parties."); *see also Adam v. Saenger*, 303 U.S.

27  59, 67-68 (1938) ("The plaintiff having, by his voluntary act in demanding justice from the

28  defendant, submitted himself to the jurisdiction of the court, there is nothing arbitrary or

unreasonable in treating him as being there for all purposes for which justice to the
defendant requires his presence.  It is the price which the state may exact as the condition of
opening its courts to the plaintiff."); *see also Benny v. Pipes*, 799 F.2d 489, 492 (9th Cir.
1986) *amended by*, 807 F.2d 1514 (9th Cir. 1987) ("A general appearance or responsive
pleading by a defendant that fails to dispute personal jurisdiction will waive any defect in
service or personal jurisdiction. . . 'An appearance ordinarily is an overt act by which the
party comes into court and submits to the jurisdiction of the court. This is an affirmative act
involving knowledge of the suit and an intention to appear.'" (citations omitted)).
Accordingly, any objections to personal jurisdiction by Andrew B. Stroud and ASI have
been waived.

There is also personal jurisdiction over Roker who is alleged to be a citizen and
resident of California and conducts business in California.  Dkt. No. 1 ¶ 2-4.  The
undersigned Magistrate Judge recommends that the District Court find that the jurisdictional
prerequisites are thus satisfied.

Additionally, none of the defendants are a minor or incompetent person or in military
service.  *See* Fed. R. Civ. P. 55(b); 50 U.S.C. app. § 521(b)(1); Dkt. Nos. 529-1 ¶ 2, No. 08-
cv-02348 JSW; 134 ¶ 6; 155 at 17, 30-35, 39, 66-68.

Finally, the Stroud parties in default were adequately served with a notice of the
motions for default judgment in accordance with Federal Rule of Civil Procedure 55(b)(2),
and filed an opposition to the motion.  *See* Dkt. Nos. 134 ¶ 5, 144, 147, 155.

**B.    Default Judgment**

In their consolidated opposition to the motions for default judgment in the three
related cases, the Stroud parties make three primary arguments for why the default motions
should be denied and the default order vacated: (1) that the default order should be vacated
pursuant to Federal Rule of Civil Procedure 60(b) because the Court's findings in that
order that Robinson has had a long time representation and involvement with the Stroud
parties, and that the Stroud parties and their counsel have acted in bad faith, are contrary to
the facts; (2) that the default order is void under Federal Rule of Civil Procedure 60(b)(4)

because the substitute motion was not properly served on Scarlett Stroud and, therefore, the Court did not have personal jurisdiction over her; and (3) that the default order should be vacated under Federal Rule of Civil Procedure 55 on the basis that "the default was not willful" because Scarlett Stroud had not been appointed as a representative of the Stroud Estate and thus was not a proper party to be substituted at the time of the substitution motion. Dkt. No. 155.

These arguments were made by the Stroud parties in support of their motion for reconsideration of the Court's order imposing terminating sanctions. Dkt. Nos. 140, 140-1, 141. In its May 8, 2013, order on the motion for reconsideration, the Court expressly found that service on Scarlett Stroud was sufficient and, while the Court granted the motion for reconsideration to the extent Scarlett Stroud was substituted in before November 20, 2012, the Court found no basis for vacating the sanctions which were not imposed until after Scarlett Stroud was a proper party to this action. Dkt. No. 168. The declaration of Robinson submitted in support of the motion for reconsideration also argued that the default order should be vacated because there is no support for the finding that Robinson has had a long time representation and involvement with the Stroud parties and there is no showing of bad faith by the Stroud parties. Dkt. No. 140-1. By denying the request to vacate the sanctions, the Court implicitly rejected this argument. In their opposition to the motion for default judgment the Stroud parties do not provide any new ground for vacating the default order.

Turning to the *Eitel* factors, the undersigned Magistrate Judge recommends that the District Court find that the application of these factors here supports entry of default judgment.

### 1.     Default Judgment on the Simone Estate's Affirmative Claims

As an initial matter, the undersigned addresses the Simone Estate's request for entry of default judgment as to Scarlett Stroud as an individual, in addition to her capacity as administratrix of the Stroud Estate. *See e.g.*, Dkt. Nos. 133 at 6-7; 183 at 2. The Simone Estate does not explain why default judgment would be appropriate against Scarlett Stroud

as an individual.  The complaint here does not name Scarlett Stroud as an individual defendant.  Moreover, Scarlett Stroud was substituted in as a representative of the Stroud Estate, not in her individual capacity.  Dkt. No. 168 at 2.  Thus, to the extent the motion for default judgment requests relief against Scarlett Stroud as an individual, the undersigned Magistrate Judge recommends that the District Court deny that request.

Additionally, the motion for default judgment states that the Simone Estate "request [sic] judgment in favor of the Estate and against the Defendants, jointly and severally." Dkt. No. 133 at 21; *see also* Dkt. No. 183 ¶ 14 (amended proposed order) ("The Estate shall recover jointly and severally against each of the Stroud Defendants and Roker."). The declaration by Dorothy Weber submitted in support of the motion states that "[t]he Complaint asserts four (4) causes of action, jointly and severally, against all Defendants." Dkt. No. 134 ¶ 2.  This statement, however, does not accurately reflect the allegations of the complaint.  While the complaint's prayer for relief states that "Plaintiff demands judgment against defendants, jointly and severally," the complaint identifies, as part of the title of each claim, the specific defendants against whom the claim is being asserted.  Dkt. No. 1 at 10:7-8, 12:5-7, 13:21, 15:2.  While the titles of the claims are not determinative on this issue, the undersigned recommends that the District Court only award relief against defendants to the extent such relief is fairly alleged in the complaint.

### a. Merits and Sufficiency of the Claims

#### i. Fraudulent Transfer – Violation of Cal. Civ. Code §3439.04 (against Roker, ASI, and Andrew B. Stroud)

In its complaint, the Simone Estate asserts a claim for the fraudulent transfer of the Simone Materials against ASI, Andrew B. Stroud, and Roker, and seeks as remedies (1) a judgment for possession of the items of personal property identified as the Simone Materials and any proceeds therefrom; (2) a judgment enjoining Andrew B. Stroud, ASI, and Roker from any further disposition, sale, transfer, lease, license or encumbrance affecting the Simone Materials, or any interest therein; (3) compensatory damages in the amount of $155,000,000.00; (4) punitive damages; and (5) interest and costs of suit.  Dkt.

No. 1 at 16.

In its default judgment motion, the Simone Estate clarifies that it is not currently seeking an award of possession with respect to the recordings and audiovisual works separate and apart from the possession sought in the related action *Brown v. Stroud*. Dkt. No. 133 n.5. Furthermore, at this time the Simone Estate is only seeking a declaration of rights, injunctive relief, constructive trust, and judgment for possession of the Simone Materials while requesting the Court to retain jurisdiction over that judgment on the basis that compensatory damages may be warranted in the event that the Simone Materials are not returned. Dkt. No. 133 at 18, n.6.

A fraudulent conveyance claim is set forth in the UFTA, which is codified in Cal. Civ. Code §§ 3439-3439.12. "A fraudulent conveyance is a transfer by the debtor of property to a third person undertaken with the intent to prevent a creditor from reaching that interest to satisfy its claim." *Kirkeby*, 33 Cal. 4th at 648. A transfer under the UFTA is defined as "every mode, direct or indirect, absolute or conditional, voluntary or involuntary, of disposing of or parting with an asset or an interest in an asset, and includes payment of money, release, lease, and creation of a lien or other encumbrance." Cal. Civ. Code § 3439.01(i). "Creditor" means a person who has a "right to payment, whether or not the right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured." Cal. Civ. Code § 3439.01(b),(c). "A transfer of assets made by a debtor is fraudulent as to a creditor, whether the creditor's claim arose before or after the transfer, if the debtor made the transfer (1) with an actual intent to hinder, delay, or defraud any creditor, or (2) without receiving reasonably equivalent value in return, and either (a) was engaged in or about to engage in a business or transaction for which the debtor's assets were unreasonably small, or (b) intended to, or reasonably believed, or reasonably should have believed, that he or she would incur debts beyond his or her ability to pay as they became due." *Kirkeby*, 33 Cal. 4th at 648; *see also* Cal. Civ. Code § 3439.04(a). In determining "actual intent," the court may consider, among other factors, "[w]hether before the transfer was made . . . the debtor

had been sued or threatened with suit." Cal. Civ. Code § 3439.04(b)(4).

Furthermore, injury to the creditor as a result of the fraudulent transfer is a necessary element for relief under the UFTA. *Fid. Nat. Title Ins. Co. v. Schroeder*, 179 Cal. App. 4th 834, 841 (2009). "It cannot be said that a creditor has been injured unless the transfer puts beyond [her] reach property [she] otherwise would be able to subject to the payment of [her] debt." *Id.* A fraudulent conveyance claim may be disposed of on default judgment. *See Tri-Continental Leasing Corp., Inc. v. Zimmerman*, 485 F. Supp. 495, 497 (N.D. Cal. 1980).

Here, the Simone Estate alleges that (1) the conveyance of all Simone Materials from Andrew B. Stroud to ASI; and (2) the conveyance of all Simone Materials from ASI to Roker, were both fraudulent, in violation of Cal. Civ. Code § 3439.04. Dkt. No. 1 ¶ 49. Specifically, the complaint alleges that the rights in the Simone Materials belonged exclusively to Nina Simone, and that, after her death, the Simone Estate always has been the rightful owner of the copyrights and other intellectual property rights, including, but not limited to, rights of publicity and privacy to the Simone Materials and the owner of the physical objects in which such intellectual property is embodied. *Id.* ¶¶ 12, 39. The complaint further alleges that the Simone Materials were appraised on September 21, 2005, by Roker, acting as an expert engaged by Andrew B. Stroud, as having a present fair market value of $155,625,000.00 and that Stroud and Roker both believed that was the fair market value of the Simone Materials as of that date. *Id.* ¶ 13. The rights to these Simone Materials have been the subject matter of the *Brown v. Stroud* action commenced on May 7, 2008. *Id.* ¶¶ 15, 31-37.

The complaint alleges that, on October 17, 2011, the Simone Estate was informed by Andrew B. Stroud's counsel that all of the Simone Materials in Andrew B. Stroud's possession, custody or control, had been "sold" to Roker for no consideration pursuant to a "Music and Artifact Agreement" dated October 1, 2011. *Id.* ¶¶ 14, 16, 41. On November 21, 2011, Andrew B. Stroud declared under oath that he was aware that Roker did not have the funds, was and is in the process of seeking "financing" to pay for the Simone Materials,

but Andrew B. Stroud caused ASI to transfer the material to him anyway. *Id.* ¶ 21. Roker and Andrew B. Stroud have had a relationship for forty-seven years. *Id.* ¶ 25. Based upon his past relationship with Andrew B. Stroud and Stroud's New York counsel, and because of the express disclosures of the dispute over the Simone Materials referenced in paragraph 3 of the "Music and Artifact Agreement," Roker had actual knowledge of the Simone Estate's claims to the Simone Materials before he took possession of them. *Id.*

The complaint further alleges that this sudden disposal of property comes on the heels of an ongoing shell game manipulated by Andrew B. Stroud in order to move these valuable assets first between and among himself and his various shell companies, and now to a third party, Roker. *Id.* ¶¶ 17, 37. The complaint alleges that Andrew B. Stroud used his dominion and control of ASI to effect the fraudulent transfers of the valuable Simone Materials and recordings to ASI in order to frustrate the Simone Estate as a future judgment creditor. *Id.* ¶ 18. The complaint further alleges that, at Andrew B. Stroud's direction, ASI's "sale" of the Simone Materials to Roker was done to defraud the Simone Estate as a probable judgment creditor and to further deplete the assets that the Simone Estate would be able to attach. *Id.* ¶ 20.

The complaint alleges that the "conveyances of the Nina Simone Masters and Materials were made with the actual intent to hinder, delay or defraud [the Estate], was made without receiving a reasonably equivalent value in exchange for the transfer or obligation, and Stroud and ASI were engaged in a business or a transaction for which Stroud's remaining assets and were unreasonably small in relation to the business or transaction <u>and</u> were intended to incur debts beyond his ability to pay as they became due." *Id.* ¶ 50. The complaint further alleges that these actions were "done with actual intent as Stroud caused ASI (1) to make the transfers to an insider, (2) concealed the transfers, (3) had been sued before the transfer was made or obligation was incurred, (4) executed the transfers for substantially all his assets to ASI and then cause [sic] ASI to transfer them to the Roker, (5) removed or concealed assets, (6) received no value or consideration – much less value or consideration which was reasonably equivalent to the value of the assets

transferred or the amount of the obligation incurred, (7) is, upon information and belief insolvent or became insolvent shortly after transfers were made or the obligation was incurred, (8) executed the transfers occurred shortly after all of his claims in the Stroud Action were dismissed without prejudice and it became clear that a substantial debt was going to be incurred in connection with the defense of the Stroud Action and no hope of any recovery to him." *Id.* ¶ 51; *see* Cal. Civ. Code § 3439(b).  The complaint further alleges that Roker, the transferee, was not a person who took in good faith or for a reasonably equivalent value.  *Id.* ¶ 52.

By virtue of their defaults, ASI, Andrew B. Stroud, Scarlett Stroud as administratrix of the Stroud Estate, and Roker have conceded the foregoing facts.  The Court finds that the Simone Estate has stated a sufficient claim of fraudulent transfer of the Simone Materials.

California Civil Code § 3439.07 sets forth the remedies in a fraudulent conveyance action which include an injunction against further disposition by the transferee of the asset transferred or its proceeds, as well as "[a]ny other relief the circumstances may require."  A creditor who makes a successful fraudulent conveyance claim under the UFTA may also obtain "[a]voidance of the transfer or obligation to the extent necessary to satisfy the creditor's claim."  *Id.* § 3439.07(a)(1); *Kirkeby*, 33 Cal. 4th at 649 (noting that § 3439.07(a)(1) may result in the voiding of a transfer of title of specific real property); *see also In re Cass*, 476 B.R. 602, 617-18 (Bankr. C.D. Cal. 2012) (observing that the UFTA did not alter the common law rule that fraudulent transfers are void *ab initio* other than to restrict ability of creditor in avoidance action to set aside fraudulent transfer to a good faith purchaser for reasonably equivalent value under § 3439.08).

The undersigned Magistrate Judge recommends that the District Court enter judgment providing that the "Music and Artifact Agreement" dated October 1, 2011, between Roker and ASI is a fraudulent transfer, is void *ab initio*, and is therefore set aside.  The undersigned further recommends that the District Court enter judgment providing that the Simone Estate is awarded immediate exclusive possession of the Remaining Simone

1   Materials, and that Roker and ASI are ordered to deliver any Remaining Simone Materials

2   in their possession, custody or control to the Simone Estate c/o Dorothy Weber, Shukat

3   Arrow Hafer Weber & Herbsman LLP, 494 8th Avenue, 6th Floor, New York, New York

4   10001 within thirty (30) days of entry of the default judgment.  The undersigned further

5   recommends that the judgment provide that, notwithstanding the foregoing, the recordings

6   and audiovisual works of Nina Simone must be delivered as required under the judgment

7   issued in *Brown v. Stroud*.

8       Additionally, the undersigned Magistrate Judge finds that the Simone Estate has

9   demonstrated that it is entitled to injunctive relief.  A plaintiff seeking a permanent

10  injunction must demonstrate: "(1) that it has suffered an irreparable injury; (2) that remedies

11  available at law, such as monetary damages, are inadequate to compensate for that injury;

12  (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy

13  in equity is warranted; and (4) that the public interest would not be disserved by a

14  permanent injunction."  *eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391 (2006).

15      Here, the Simone Estate alleges that its numerous attempts to communicate with

16  Roker in an effort to ascertain the location, integrity and condition of the Simone Materials

17  and to discuss the terms of a standstill agreement in order to preserve the Simone Materials

18  have been unsuccessful.  Dkt. No. 1 ¶¶ 22-24.  According to the Simone Estate's complaint,

19  it is likely that Roker is in possession of Simone Materials, and there is an imminent threat

20  that he will attempt to publish and claim the copyright to those items, the copyright to

21  which properly belongs to the Simone Estate.  *Id.* ¶ 42.  The complaint further alleges that

22  Andrew B. Stroud has publicly disseminated, and now putatively sold, the Simone

23  Materials, and has usurped the copyright and other intellectual property rights to the Simone

24  Materials, and transferred possession of them to Roker.  *Id.* ¶ 40. The complaint further

25  alleges that this sudden disposal of property comes on the heels of an ongoing shell game

26  manipulated by Andrew B. Stroud in order to move these valuable assets first between and

27  among himself and his various shell companies, and now to a third party, Roker.  *Id.* ¶¶ 17,

28  37.  Additionally, the history of the Stroud parties' unexcused delay, bad faith, and failure

1    to respond to the Court's orders suggests that these activities will not cease absent judicial

2    intervention.

3              Therefore, the undersigned Magistrate Judge finds that the Simone Estate will be

4    irreparably harmed if an injunction is not issued and recommends that the District Court

5    enter a permanent injunction providing that ASI, Andrew B. Stroud, Scarlett Stroud as

6    administratrix of the Stroud Estate, and Roker, and their agents, affiliates, representatives

7    and all those acting in concert with them are permanently enjoined, restrained and

8    prohibited from any further disposition, sale, transfer, lease, license or encumbrance

9    affecting the Simone Materials, or any interest therein.

10                        ii.        **Misappropriation and Conversion (against Roker, ASI, and**
                                     **Andrew B. Stroud)**
11

12             In addition to the remedies prayed for in connection with the fraudulent transfer

13   claim, the Simone Estate seeks relief based on its claim of misappropriation and conversion

14   of the Simone Materials.  Dkt. No. 1 at 13-14, 16:19-17:10.  While the title of this claim

15   states that it is being asserted against Roker and ASI, *id.* at 13:21, the allegations relating to

16   the claim, as well as the relief requested based on that claim, indicate that the claim is also

17   asserted against Andrew B. Stroud.  *See id.* ¶ 56, at 16:19-17:10.

18             To establish conversion, a party must show (1) its ownership of or right to possess the

19   property at the time of the conversion, (2) defendant's conversion by a wrongful act or

20   disposition of plaintiff's property rights and (3) damages.  *Messerall v. Fulwider*, 199 Cal.

21   App. 3d 1324, 1329 (1988).  "A plaintiff need not have legal ownership or absolute

22   ownership of the property. . . .  It need only allege that it is entitled to immediate possession

23   of the property at the time of conversion."  *Florey Inst. of Neuroscience & Mental Health v.*

24   *Kleiner Perkins Caufield & Byers*, No. 12-cv-6504 SC, 2013 WL 5402093, at *6 (N.D. Cal.

25   Sept. 26, 2013).  To state a claim for misappropriation under California common law, a

26   plaintiff must establish three elements: (1) that the plaintiff has invested substantial time

27   and money in the development of its property; (2) that the defendant has appropriated the

28   property at little or no cost; and (3) that the plaintiff has been injured by the defendant's

Case No. 11-cv-05822 JSW (NC)
REPORT AND RECOMMENDATION ON                              44
MOTION FOR DEFAULT JUDGMENT

conduct.  *Firoozye*, 153 F. Supp. 2d at 1129-30 (citing *Summit Mach. Tool Mfg. Corp. v. Victor CNC Sys., Inc.*, 7 F.3d 1434, 1441 (9th Cir. 1993)).

The Simone Estate alleges that it possesses the rights of ownership and title in and to the Simone Materials which are superior to any rights of ASI and Roker and, accordingly, is entitled to immediate possession of the Simone Materials.  Dkt. No. 1 ¶ 57.  The complaint further alleges that Roker, ASI, and Andrew B. Stroud through fraud and deception, deprived the Simone Estate of the possession of property in which the Simone Estate claims legitimate right and title and which is presently the subject of the *Brown v. Stroud* action.  *Id.* ¶ 56.  The complaint alleges that defendants' unlawful exercise of dominion and control over this valuable property constitutes a conversion or wrongful misappropriation which has caused injury to the Simone Estate.  *Id.* ¶ 59.  The Simone Estate claims that defendants' conduct has deprived the Simone Estate of its right to copy these materials in order to register them for copyright protection.  *Id.* ¶ 60.  By virtue of their defaults, ASI, Andrew B. Stroud, Scarlett Stroud as administratrix of the Stroud Estate, and Roker have conceded the foregoing facts.

The Simone Estate's default judgment motion treats Nina Simone's recordings and audiovisual works separately from the rest of the Simone Materials, due to the outstanding disputes concerning the ownership of those materials between the Simone Estate, Brown and Sony Music.  Dkt. No. 133 n.4.  As a result, the Simone Estate is not seeking an award of possession or constructive trust with respect to the recordings and audiovisual works separate and apart from the relief sought in the *Brown v. Stroud* action.  *Id.* at n.8. Accordingly, the undersigned Magistrate Judge finds that the Simone Estate has stated a sufficient claim for conversion and misappropriation with respect to the Remaining Simone Materials.

In connection with this claim, the Simone Estate moves for default judgment for "an injunction, full restitution and constructive trust as prayed for in the Estate's Complaint." Dkt. No. 133 at 15:4-5.  The complaint seeks damages, Dkt. No. 1 ¶¶  59-61, an injunction and judgment of possession similar to those sought based on the fraudulent transfer claim,

"the imposition of a constructive trust on all assets ostensibly transferred by the ["Music and Artifact Agreement", or any and all [Simone Materials] in the possession, custody or control of Roker," "full restitution," and an order requiring the Simone Materials to be made available for copying and non-destructive preservation, *id.* at 16:19-17:10.

"As a general rule, the normal measure of damages for conversion is the value of the property at the time of the conversion and a fair compensation for the time and money properly expended in pursuit of the property." *Chase Inv. Servs. Corp. v. Law Offices of Jon Divens & Associates, LLC*, 748 F. Supp. 2d 1145, 1181 (C.D. Cal. 2010) (quoting *Virtanen v. O'Connell*, 140 Cal. App. 4th 688, 708 (2006) (internal quotation marks omitted)). Furthermore, under the common law remedy of replevin, a plaintiff could "recover both personal property and incidental damages from an unlawful possessor." *Adler v. Taylor*, No. 04-cv-08472, 2005 WL 4658511, at *3 (C.D. Cal. Feb. 2, 2005). "In federal courts, replevin is a remedy specifically approved by rule, as governed by the appropriate state law." *Id.* For specific recovery, a plaintiff only needs to show (1) a right to possession of the property; and (2) the defendant's wrongful possession. *Id.*; *Stockton Morris Plan Co. v. Mariposa Cnty.*, 99 Cal. App. 2d 210, 213 (1950). In other words, replevin is an available remedy for conversion, and when a complaint supports a conversion claim, it also supports a remedy of replevin. *Adler*, 2005 WL 4658511, at *3; *see also Int'l Raelian Movement (IRM) v. Hashem*, No. 08-cv-0687, 2011 WL 3794899, at *8 (E.D. Cal. Aug. 25, 2011) (recommending default judgment and order of replevin requiring defaulted defendants to return to plaintiff film footage they had wrongfully converted from plaintiff).

Furthermore, as a remedy for a conversion claim, the court may impose a constructive trust on the money or property unlawfully converted by defendant, compelling the defendant to transfer the property to the rightful owner. *Chase Inv. Servs. Corp.*, 748 F. Supp. 2d at 1181 (citing *Burlesci v. Petersen*, 68 Cal. App. 4th 1062, 1069 (1998)). For a court to create a constructive trust, the plaintiff must show "(1) the existence of a res (property or some interest in property); (2) the right of a complaining party to that res; and (3) some wrongful acquisition or detention of the res by another party who is not entitled to

46

it." *Burlesci*, 68 Cal. App. 4th at 1069; *see also Adler*, 2005 WL 4658511, at *3 (finding that the same facts that supported a claim for conversion and replevin also supported a constructive trust remedy). "[A] constructive trust may be imposed in practically any case where there is a wrongful acquisition or detention of property to which another is entitled." *Burlesci*, 68 Cal. 4th at 1069.

The undersigned Magistrate Judge finds that the facts supporting the Simone Estate's claim for conversion further entitle the Simone Estate to immediate possession of the converted property and the imposition of a constructive trust. Therefore, the undersigned recommends that the District Court enter judgment imposing a constructive trust in favor of the Simone Estate on all Simone Materials in the possession, custody or control of Roker with the exception of the recordings and audiovisual works of Nina Simone that are to be delivered as required under the judgment in *Brown v. Stroud*. The undersigned further recommends that the District Court enter judgment awarding the Simone Estate immediate exclusive possession of the Remaining Simone Materials as ordered by the Court in connection with the fraudulent transfer claim.

Finally, the Simone Estate also seeks "full restitution." Dkt. Nos. 1 at 16:24-17:1; 133 at 15:4-5. "However, in California, the restitution remedy is only applicable to breach of contract claims." *Adler*, 2005 WL 4658511, at *4 (citing *Freedman v. St. Matthias Parish*, 37 Cal. 2d 16 (1951)). As in *Adler*, here the Simone Estate's "'restitution' claim is better termed a demand for specific recovery and any incidental damages," which are being addressed in other sections of this report and recommendation. *Id.*

### iii.     Accounting (against Roker and ASI)

The Simone Estate's motion for default judgment also seeks an order requiring Roker and ASI to account for all assets, transactions, and profits relating to Nina Simone. Dkt. Nos. 1 at 17:11-21; 133 at 15-16. To state a claim for accounting, a plaintiff needs to show "(1) [a] relationship between plaintiff and defendant, such as a fiduciary relationship, that calls for an accounting, and (2) that defendant owes a balance to plaintiff that is too complicated to calculate without an accounting from the court." *EMC Corp. v. Sha*, No. 13-

1    cv-00118 EJD, 2013 WL 4399025, at *6 (N.D. Cal. Aug. 13, 2013) (citations omitted);

2    *Teselle v. McLoughlin*, 173 Cal. App. 4th 156, 179-80 (2009). "However, a fiduciary

3    relationship between the parties is not required to state a cause of action for accounting.

4    The right to an accounting can arise from the possession by the defendant of money or

5    property which, because of the defendant's relationship with the plaintiff, the defendant is

6    obliged to surrender." *Teselle*, 173 Cal. App. 4th at 179-80 (citation omitted).  A claim for

7    an accounting may be decided on a motion for default judgment.  *See, e.g.*, *Williams-*

8    *Sonoma, Inc. v. Friendfinder, Inc.*, No. 06-cv-6572 JSW (MEJ), 2007 WL 4973848, at *7,

9    10 (N.D. Cal. Dec. 6, 2007) (recommending that the District Court grant default judgment

10   and permit plaintiff the opportunity to brief the specific amount of damages after a full

11   accounting).

12       The complaint alleges that due to defendants' wrongful conduct, the Simone Estate is

13   entitled to an accounting of "any and all proceeds of any of the Defendants relating to their

14   activity in connection with their efforts to sell and distribute the Simone Materials and

15   Masters including, but not limited to an accounting of (a) any and all assets ostensibly

16   owned or in the possession, custody or control of the Defendants of or relating to Nina

17   Simone, (b) all transactions, acquisitions or transfers by the Defendants of or relating to

18   Nina Simone; and (c) all deposits into and transfers out of any bank account maintained by

19   the Defendants."  Dkt. No. 1 at 15.  The complaint further alleges that, upon such

20   accounting, the Simone Estate is entitled to any and all assets of or relating to Nina Simone,

21   ostensibly owned or in the possession, custody or control of the defendants.  *Id.*

22       The Simone Estate, having already established claims for conversion,

23   misappropriation, and fraudulent transfer, is entitled to an accounting in order to assess the

24   full extent of the defendants' wrongful conduct and any damages.  However, the Simone

25   Estate has not provided a valid basis for the Court to order an accounting "for all profits,

26   gains and advantages derived from [Roker's and ASI's] acts of conversion and for its [sic]

27   other violations of law."  *See* Dkt. Nos. 1 at 17:12-14; 183 ¶ 8.  The Simone Estate's

28   complaint does not state a claim for conversion or misappropriation as to such profits.  Even

if it did, however, such a claim would be preempted, at least in part, under the Copyright Act.

Accordingly, the undersigned Magistrate Judge recommends that the District Court enter judgment ordering that Roker and ASI must, within thirty (30) days of the date of entry of default judgment, account for any and all Simone Materials in their possession, custody or control, including any and all assets ostensibly transferred to Roker pursuant to "Music and Artifacts Agreement" from ASI or Andrew B. Stroud, and for any transactions, acquisitions or transfers by Roker and ASI of or relating to the Simone Materials.

### iv.      Declaratory Relief Claim (against Roker and ASI)

The Simone Estate also moves for default judgment on its claim for declaratory relief against Roker and ASI.  The Declaratory Judgment Act provides that, "[i]n a case of actual controversy" within their jurisdiction, district courts may "declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought."  28 U.S.C. § 2201(a).  For declaratory relief, there must be "a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant issuance of a declaratory judgment." *Spokane Indian Tribe v. United States*, 972 F.2d 1090, 1092 (9th Cir. 1992) (quoting *Maryland Casualty Co. v. Pac. Coal & Oil Co.*, 312 U.S. 270, 273 (1941)).  "Ordinarily the question of whether a district court shall exercise jurisdiction in a declaratory judgment action rests in the sound discretion of that court." *McGraw-Edison Co. v. Preformed Line Prods. Co.*, 362 F.2d 339, 342 (9th Cir. 1966).  "The two principal criteria guiding the policy in favor of rendering declaratory judgments are (1) when the judgment will serve a useful purpose in clarifying and settling the legal relations in issue, and (2) when it will terminate and afford relief from the uncertainty, insecurity, and controversy giving rise to the proceeding." *Id.* (citation omitted). *See also Round Hill Cellars v. Lolonis Winery*, No. 11-cv-00757 JSW (EDL), 2011 WL 6961333, at *2-5 (N.D. Cal. Dec. 9, 2011) (granting default judgment for declaratory relief that plaintiff did not infringe defendant's trademarks); *Junker v. HDC Corp.*, No. 07-cv-05094 JCS, 2008 WL 3385819, at *3 (N.D. Cal. July 28, 2008) (where

1  defendant to patent infringement claim failed to respond and did not present any defense,

2  meritorious or otherwise, "entry of default judgment is justified without further proof of

3  [the] claim of infringement").

4       Here, the Simone Estate seeks a judicial declaration that ASI and Roker have no

5  rights to the Simone Materials which are the subject of the *Brown v. Stroud* action.  Dkt.

6  No. 1 at 11:24-25, 16:5-6.  The complaint alleges that the rights to the Simone Materials

7  belonged exclusively to Nina Simone, and that, after her death, the Simone Estate has been

8  the rightful owner of the copyrights and other intellectual property rights to the Simone

9  Materials and the owner of the physical objects in which such intellectual property is

10  embodied.  *Id.* ¶ 39.  Nevertheless, Andrew B. Stroud has publicly disseminated, and now

11  putatively sold, the Simone Materials, and has usurped the copyright and other intellectual

12  property rights to the Simone Materials, and transferred possession of them to Roker.  *Id.*

13  ¶ 40.  The complaint also alleges that it is likely that Roker is in possession of Simone

14  Materials, and there is an imminent threat that he will attempt to publish and claim the

15  copyright to those materials.  *Id.* ¶ 42.  The complaint alleges that there is a controversy

16  between the Simone Estate, Roker, and ASI concerning their respective rights in the Simone

17  Materials.  *Id.* ¶ 43.  By virtue of their default, ASI and Roker have conceded these facts.

18       Entry of default judgment as requested here will not fully resolve this matter because

19  Sony Music, Brown, and the Simone Estate each assert ownership interests in the Nina

20  Simone recordings and audiovisual works.  *See e.g.*, Dkt. Nos. 82 at 10:10-18, 11:5-10; 263

21  ¶¶ 42-47, No. 08-cv-02348 JSW; Dkt. No. 1 ¶ 39, n.4.  The Simone Estate, however,

22  contends that judgment is proper under Federal Rule of Civil Procedure 54(b) which

23  provides that, where there are multiple claims or multiple parties involved in an action, a

24  court may enter final judgment as to fewer than all of the claims or parties if the court

25  "determines that there is no just reason for delay."  Fed. R. Civ. P. 54(b); Dkt. No. 133 at 2.

26       The undersigned agrees that there is no impediment to the immediate entry of default

27  judgment for declaratory relief as requested.  A judgment stating that ASI and Roker have

28  no rights to the Simone Materials, without deciding the ownership interests among Sony

Music, Brown, and the Simone Estate does not create a risk of inconsistent judgments, and there is no just reason to delay entry of judgment.  At the same time, the requested judgment will clarify the legal relations between the parties and will afford the moving parties relief from the controversy giving rise to this action by clarifying that ASI and Roker have no rights to the Simone Materials.

Accordingly, the undersigned Magistrate Judge finds that the Simone Estate has stated a sufficient claim for declaratory relief and recommends that the District Court enter default judgment declaring that ASI and Roker have no rights in or to the Simone Materials. That being so, the undersigned recommends that the District Court also enter default judgment declaring that ASI and Roker own no interest in any Nina Simone performance embodied in the works bearing the following U.S. Copyright Office registrations:

| Title | Registration number |
|---|---|
| Nina Simone Sings Billie Holiday | N-4087 |
| Revolution: College Concerts (Amherst/Morehouse) | PAu-296-1390 |
| Nina Simone Protest Anthology | SRu-613-162 |
| Nina Simone Recordings: Vol. 2 | SRu-618-625 |
| Nina Simone Recordings: Vol. 5 | SRu-591-966 |
| Nina Simone Recordings: Vol. 6 | SRu-590-905 |
| Nina Simone – Montreux Jazz Festival | SRu-606-013 |
| Nina Simone Great Performances | PAu-335-5670 |
| Nina Simone Assorted Photographs | PAu-688-185 |
| Nina Simone Home Movie | PAu-293-401 |

The undersigned further recommends that the District Court hold that the default judgment does not adjudicate as between Brown, the Simone Estate, and Sony Music, the ownership rights to any Nina Simone recordings or audiovisual works or the right to possession of any objects in which they are embodied, or the right to keep copies thereof, or the right to any of Stroud's profits thereon.  *See* Dkt. Nos. 524 ¶ 10, 596 at 46:5-9, No. 08-

1  cv-02348 JSW.

2      Additionally, the Simone Estate seeks a judicial declaration (1) that the "Music and

3  Artifact Agreement" between Roker and ASI is a sham transaction made for no

4  consideration and is void *ab initio*; and (2) rescinding the "Music and Artifact Agreement."

5  Dkt. Nos. 1 at 11 ¶ 46; 183 ¶¶ 1-2.

6      The court may issue a declaratory judgment even where another remedy is available.

7  *See* 28 U.S.C. § 2201(a).  However, "[a]lthough the availability of alternative remedies is

8  not a bar to declaratory relief, Fed. R. Civ. P. 57, the district court may in its discretion

9  refuse declaratory relief if the alternative remedy is more appropriate."  *Smith v. Metro.*

10 *Prop. & Liab. Ins. Co.*, 629 F.2d 757, 759 (2d Cir. 1980) (citations omitted); *see also Roark*

11 *v. South Iron R-1 School Dist.*, 573 F.3d 556, 562 (8th Cir. 2009) (vacating as "superfluous"

12 a declaratory judgment where permanent injunction that also issued was the "operative

13 remedy").

14     Moreover, rescission is generally understood to mean the "unmaking of a contract,"

15 and typically applies as a remedy only in contract actions.  *People v. Beaumont Inv., Ltd.*,

16 111 Cal. App. 4th 102, 133-34 (2003) (citations omitted).  "Once a contract has been

17 rescinded it is void *ab initio*, as if it never existed."  *Little v. Pullman*, 219 Cal. App. 4th

18 558, 568 (2013) (citations omitted); Cal. Civ. Code § 1688 ("A contract is extinguished by

19 its rescission.").  This is not an action on a contract.

20     The undersigned Magistrate Judge has already found that the Simone Estate has

21 established its claims for fraudulent transfer, conversion, and misappropriation and is thus

22 entitled to set aside the "Music and Artifact Agreement" and to obtain constructive trust and

23 possession of the Remaining Simone Materials.  In light of these alternative remedies, the

24 undersigned recommends that the District Court exercise its discretion to decline the request

25 for a judicial declaration that the "Music and Artifact Agreement" is a sham transaction,

26 made for no consideration, void *ab initio*, or rescinded.

27                    **v.    Request to Retain Jurisdiction**

28     While the Simone Estate is not seeking damages at this time, it requests that the Court

1   retain jurisdiction over the judgment, as compensatory damages may be warranted in the

2   event that any Simone Materials are not returned and monetary damages are necessary to

3   compensate the Simone Estate for any lost or damaged property.  As it is not possible to

4   calculate these possible monetary damages until it is known which property is returned, the

5   Simone Estate seeks to have this Court retain jurisdiction so that the judgment may be

6   modified as appropriate to award compensation for any property not returned.  Dkt. No. 133

7   at 18, n.6, n.7.

8          The Court notes that there is a question about whether the Simone Estate is entitled to

9   monetary damages under the UFTA and what is the proper measure of such damages.  *See*

10  *Renda v. Nevarez*, 223 Cal. App. 4th 1231, 1236-37 (2014) (noting that there are cases

11  suggesting that the UFTA does not authorize entry of a money judgment against a debtor

12  under any circumstances, but declining to decide that broad issue because even assuming a

13  creditor may recover such a money judgment under some circumstances, the trial court

14  properly denied that remedy as violating the rule prohibiting double recovery for the same

15  harm); *see also Cheung v. Daley*, 35 Cal. App. 4th 1673, 1677 (1995) (reversing punitive

16  damages award where jury awarded zero dollars in compensatory damages for fraudulent

17  transfer, implying jury could have awarded compensatory damages); *but see Forum Ins. Co.*

18  *v. Devere Ltd.*, 151 F. Supp. 2d 1145, 1148 (C.D. Cal. 2001) (holding that "by its terms,

19  UFTA allows only equitable remedies such as avoidance, attachment, an injunction, or

20  appointment of a receiver.  Upon finding an UFTA violation, the court may cancel the

21  transfer or impose a lien against the transferred property, but it may not award damages."),

22  *aff'd sub nom. Forum Ins. Co. v. Comparet*, 62 F. App'x 151 (9th Cir. 2003).  Simone

23  Estate has not briefed this issue in its motion for default judgment and the Court here need

24  not resolve the issue because the Simone Estate is not seeking damages at this stage.  If the

25  Simone Estate later moves for damages under the UFTA, it must demonstrate that the law

26  provides for such damages.

27         Additionally, monetary damages for conversion would be appropriate under

28  California Civil Code § 3336.  *See* Cal. Civ. Code § 3336; *Tyrone Pac. Int'l, Inc. v. MV*

*Eurychili*, 658 F.2d 664, 666-67 (9th Cir. 1981); *see also Al G. Barnes Shows Co. v. Tait*, 61 Cal. App. 304, 309 (1923) ("A judgment for defendant for a return of property, or for its value where return cannot be had, is a proper judgment in replevin."); *cf. Int'l Raelian Movement*, 2011 WL 3794899, at *8 (declining on a default judgment to reserve the issue of damages in the event of non-delivery of the property in a replevin action where plaintiff had two opportunities and ample time to propose alternative damages and provide evidence in support of the award of such damages, but failed to do so).

Furthermore, it is within the Court's power to retain jurisdiction for the purpose of amending the judgment by default once an audit assesses the damages. *See, e.g., Bd. of Trs. of Laborers Health & Welfare Trust Fund for N. Cal. v. Shade Constr. & Eng'g*, No. 06-cv-06830 PJH (EMC), 2007 WL 3071003, at *5 (N.D. Cal. Oct. 19, 2007); *Bay Area Painters v. Alta Specialty*, No. 06-cv-06996 MJJ (JCS), 2008 WL 114931, at *6 (N.D. Cal. Jan. 10, 2008) (retaining jurisdiction over future requests for attorneys' fees and costs incurred in judgment collection).

Accordingly, the undersigned Magistrate Judge recommends that the District Court reserve jurisdiction to amend the judgment to award to the Simone Estate any such monetary compensatory damages resulting from defendants' failure to deliver possession of any property awarded, or to account, as required in this order.

### b.   Remaining *Eitel* Factors

On balance, the remaining *Eitel* factors also favor entry of default judgment. First, as discussed above, the Simone Estate has demonstrated that it would be prejudiced by defendants' failure to provide an accounting of the Simone Materials in their possession, or if default judgment is not granted to enjoin defendants' conduct. This factor thus weighs in favor of default judgment.

Second, while the assertion of affirmative claims by the Stroud parties suggests a possibility of a dispute concerning the ownership of the Simone Materials, the Court's dismissal of those claims with prejudice in *Brown v. Stroud* based on failure to state a claim despite multiple opportunities to replead, *see* Dkt. No. 337, No. 08-cv-02348 JSW, indicates

1  that this factor also supports the entry of default judgment.

2       Third, while the public policy favoring disposition of cases on their merits usually

3  counsels against dismissal, the history of the Stroud parties' unexcused delay, bad faith, and

4  failure to respond to the Court's orders, *see* Dkt. No. 124, shows that it is unlikely that entry

5  of default against the Stroud parties was the result of excusable neglect.  With respect to

6  Roker, a declaration submitted by Brown in *Brown v. Stroud* shows that Roker was aware

7  of the *Kelly v. Roker* case and the default entered against him.  Dkt. No. 392-1 ¶ 7-10, No.

8  08-cv-02348 JSW.

9       Fourth, at this time the Simone Estate is only seeking a declaration of rights,

10  injunctive relief, constructive trust, and judgment for possession of the Simone Materials

11  while requesting the Court to retain jurisdiction over that judgment on the basis that

12  compensatory damages may be warranted in the event that any Simone Materials are not

13  returned.  Dkt. No. 133 at 18, n.6, n.7.  The Simone Estate thus is not seeking an excessive

14  or speculative monetary award.  Therefore, there is no concern that a large, unreasonable

15  monetary judgment will negatively impact defendants in this case.

16       Finally, although federal policy generally favors decisions on the merits, "the mere

17  existence of Fed. R. Civ. P. 55(b) indicates that 'this preference, standing alone, is not

18  dispositive.'" *PepsiCo, Inc. v. Cal. Sec. Cans*, 238 F. Supp. 2d 1172, 1177 (C.D. Cal. 2002)

19  (citation omitted); *see Craigslist, Inc. v. Naturemarket, Inc.*, 694 F. Supp. 2d 1039, 1061

20  (N.D. Cal. 2010) (finding that entry of default judgment is warranted where a defendant's

21  failure to appear makes a decision on the merits impracticable, if not impossible).  The

22  Stroud parties' conduct, which has been found to hinder, delay and obfuscate the judicial

23  process, has made a decision against them on the merits impracticable, if not impossible.

24       **2.   Judgment of Dismissal as to ASI's Affirmative Claims**

25       The Simone Estate also seeks entry of judgment of dismissal on ASI's counterclaims

26  for (1) declaratory judgment; (2) copyright infringement; (3) vicarious copyright

27  infringement; (4) contributory copyright infringement; (5) and copyright infringement

28  under California law.   Dkt. Nos. 11; 133 at 20.

Case No. 11-cv-05822 JSW (NC)
REPORT AND RECOMMENDATION ON          55
MOTION FOR DEFAULT JUDGMENT

1    Under Federal Rule of Civil Procedure 41(b) the Court may dismiss an action or a

2 claim if "the plaintiff fails to prosecute or to comply with these rules or a court order."  In

3 determining whether to dismiss a case under Rule 41(b), "the district court must weigh five

4 factors including: '(1) the public's interest in expeditious resolution of litigation; (2) the

5 court's need to manage its docket; (3) the risk of prejudice to the defendants; (4) the public

6 policy favoring disposition of cases on their merits; and (5) the availability of less drastic

7 alternatives.'"  *Ferdik v. Bonzelet*, 963 F.2d 1258, 1260-61 (9th Cir. 1992) (citations

8 omitted).  "Dismissal with prejudice under Rule 41(b) for failure to prosecute is the

9 converse of a default judgment.  In both instances, the consequence of the attorney's action

10 (or inaction) is a loss of the case on the merits.  The only significant difference is that the

11 plaintiff rather than the defendant suffers the adverse judgment."  *Lal v. California*, 610

12 F.3d 518, 524-25 (9th Cir. 2010); *see also United States v. Approximately $73,562 in U.S.*

13 *Currency*, No. 08-cv-2458 SBA, 2011 WL 108509, at *2 n.2 (N.D. Cal. Jan. 12, 2011)

14 ("Though not identical, the relevant inquiry germane to a Rule 41(b) dismissal is largely

15 coextensive with the analysis applicable to a motion for default judgment.").

16    In his February 14, 2013, order, Judge White already dismissed "all affirmative

17 claims by the estate of Andrew Stroud, ASI and SPE," and entered default against them.

18 Dkt. No. 124 at 6.  Judge White expressly found that terminating sanctions were

19 "warranted due to the bad faith of counsel and of the Stroud parties, their repeated

20 gamesmanship and misconduct, their blatant disregard of the Court's orders, the Court's

21 need to manage its docket, and the need to prevent prejudice to the other parties in this

22 litigation who have been diligently attempting to litigate these cases."  *Id.* at 5-6.  Thus, at

23 least three of the factors pertinent under Rule 41(b)—the public's interest in expeditious

24 resolution of litigation, the court's need to manage its docket, and the risk of prejudice to

25 the defendants all weigh in favor of dismissal of ASI's counterclaims.

26    Additionally, the Stroud parties' continued failure to pay discovery sanctions despite

27 clear and explicit orders, *see* Dkt. No. 124, indicates the lack of availability of less drastic

28 alternatives.  Moreover, while the public policy favoring disposition of cases on their

merits usually counsels against dismissal, the history of the Stroud parties' unexcused delay, bad faith, and failure to respond to the Court's orders, *see* Dkt. No. 124, shows that it is unlikely that their claims can be resolved on the merits and that the entry of default against them was the result of excusable neglect.  While the assertion of affirmative claims by the Stroud parties suggests a possibility of a dispute concerning the ownership of the Simone Materials, the Court's dismissal of those claims with prejudice in *Brown v. Stroud* based on failure to state a claim despite multiple opportunities to replead, *see* Dkt. No. 337, No. 08-cv-02348 JSW, indicates that this factor also supports the entry of default judgment.

Thus, on balance, both the factors under Rule 41(b) and the similar *Eitel* factors support the dismissal of ASI's counterclaims and entry of default judgment against it.

### IV. CONCLUSION

The undersigned Magistrate Judge RECOMMENDS that the District Court GRANT IN PART AND DENY IN PART the motion for default judgment by the Simone Estate as follows:

1.     The undersigned Magistrate Judge recommends that the District Court enter default judgment providing that the "Music and Artifact Agreement" dated October 1, 2011, between Roker and ASI is a fraudulent transfer, is void *ab initio*, and is therefore set aside. The undersigned further recommends that the District Court enter judgment providing that the Simone Estate is awarded immediate exclusive possession of the Remaining Simone Materials, and that Roker and ASI are ordered to deliver any Remaining Simone Materials in their possession, custody or control to the Simone Estate c/o Dorothy Weber, Shukat Arrow Hafer Weber & Herbsman LLP, 494 8th Avenue, 6th Floor, New York, New York 10001 within thirty (30) days of entry of the default judgment.  The undersigned further recommends that the judgment provide that, notwithstanding the foregoing, the recordings and audiovisual works of Nina Simone must be delivered as required under the judgment issued in *Brown v. Stroud*.

2.     The undersigned Magistrate Judge recommends that the District Court enter a

permanent injunction providing that ASI, Andrew B. Stroud, Scarlett Stroud as administratrix of the Stroud Estate, and Roker, and their agents, affiliates, representatives and all those acting in concert with them are permanently enjoined, restrained and prohibited from any further disposition, sale, transfer, lease, license or encumbrance affecting the Simone Materials, or any interest therein.

3.      The undersigned Magistrate Judge recommends that the District Court enter judgment imposing a constructive trust in favor of the Simone Estate on all Simone Materials in the possession, custody or control of Roker with the exception of the recordings and audiovisual works of Nina Simone that are to be delivered as required under the recommended judgment in *Brown v. Stroud*.

4.      The undersigned Magistrate Judge recommends that the District Court enter judgment ordering that Roker and ASI must, within thirty (30) days of the date of entry of default judgment, account for any and all Simone Materials in their possession, custody or control, including any and all assets ostensibly transferred to Roker pursuant to "Music and Artifacts Agreement" from ASI or Andrew B. Stroud, and for any transactions, acquisitions or transfers by Roker and ASI of or relating to the Simone Materials.

5.      The undersigned Magistrate Judge recommends that the District Court enter default judgment declaring that ASI and Roker have no rights in or to the Simone Materials. That being so, the undersigned recommends that the District Court also enter default judgment declaring that ASI and Roker own no interest in any Nina Simone performance embodied in the works bearing the following U.S. Copyright Office registrations:

| Title | Registration number |
|---|---|
| Nina Simone Sings Billie Holiday | N-4087 |
| Revolution: College Concerts (Amherst/Morehouse) | PAu-296-1390 |
| Nina Simone Protest Anthology | SRu-613-162 |
| Nina Simone Recordings: Vol. 2 | SRu-618-625 |
| Nina Simone Recordings: Vol. 5 | SRu-591-966 |
| Nina Simone Recordings: Vol. 6 | SRu-590-905 |

| Nina Simone – Montreux Jazz Festival | SRu-606-013 |
|---|---|
| Nina Simone Great Performances | PAu-335-5670 |
| Nina Simone Assorted Photographs | PAu-688-185 |
| Nina Simone Home Movie | PAu-293-401 |

The undersigned further recommends that the District Court hold that the default judgment does not adjudicate as between Brown, the Simone Estate, and Sony Music, the ownership rights to any Nina Simone recordings or audiovisual works or the right to possession of any objects in which they are embodied, or the right to keep copies thereof, or the right to any of Stroud's profits thereon.

The undersigned further recommends that the District Court exercise its discretion to decline the Simone Estate's request for a judicial declaration that the "Music and Artifact Agreement" is a sham transaction, made for no consideration, void *ab initio*, or rescinded.

6.      The undersigned Magistrate Judge recommends that the District Court reserve jurisdiction to amend the judgment to award to the Simone Estate any such monetary compensatory damages resulting from defendants' failure to deliver possession of any property awarded, or to account, as required in this order.

7.      The undersigned Magistrate Judge recommends that the District Court enter a judgment in favor of the Simone Estate dismissing ASI's counterclaims with prejudice.

8.      The undersigned Magistrate Judge recommends that the District Court deny the Simone Estate's request for relief against Scarlett Stroud as an individual.

The moving parties must serve Roker and the Stroud parties with this order in a manner to ensure notice.

//

Any party may object to this recommendation within 14 days after being served with

a copy.  Fed. R. Civ. P. 72(b).

IT IS SO ORDERED.

Date: June 4, 2014

_____
Nathanael M. Cousins
United States Magistrate Judge